Douglas A. BROOK, Director, Office of Personnel Management, Petitioner,

v.

Eugene J. CORRADO,

and

Washington Area Metal Trades Council, Respondents.

No. 92–3381.

United States Court of Appeals, Federal Circuit.

July 9, 1993.

Before NIES, Chief Judge, CLEVENGER and RADER, Circuit Judges.

RADER, Circuit Judge.

The Office of Personnel Management was granted leave to appeal an arbitrator's decision to reinstate Eugene Corrado to his position at National Aeronautics and Space Administration's (NASA) Goddard Space Flight Center. The arbitrator determined that the Government did not show a nexus between Mr. Corrado's conviction for possession of cocaine with intent to distribute and NASA's removal of Mr. Corrado to promote the efficiency of the service. Because the Government clearly showed a nexus, this court reverses.

*Background*

On June 11, 1985, NASA hired Mr. Corrado as an Electrician at Goddard. In this position, Mr. Corrado maintained, repaired, and modified the entire Goddard electrical power distribution system. Thus, he was responsible in part for the central power plant, the main electrical substation, and the complex that houses Goddard's spacecraft tracking and data control centers. Mr. Corrado's position description stated:

> An extreme degree of responsibility, knowledge, and skill is required in that . . . a serious mistake in judgment or technique could result in a total Center black-out or could impair the safety of personnel or equipment. Even an error of lesser magnitude could result in a loss of service to a critical area which might involve any loss from a multimillion dollar satellite to the lives of astronauts on a manned mission.

Mr. Corrado worked independently, with minimal supervision, and with full access to all buildings and areas of Goddard.

Eight months after beginning at Goddard, Mr. Corrado was arrested for possession of cocaine with intent to distribute. He pleaded guilty and was convicted. A month later, Mr. Corrado informed his employer of the conviction. After an investigation, Mr. Corrado's NASA supervisor proposed Mr. Corrado's removal. The proposal letter, however, did not set forth a nexus between Mr.

Domenique Kirchner, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for petitioner. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Terrence S. Hartman, Asst. Director.

James H. Heller, Kator, Scott & Heller, of Washington, DC, argued for respondents. With him on the brief was Irving Kator.

Corrado's misconduct and NASA's removal proposal.

In his response, Mr. Corrado denied intentionally possessing or intending to distribute cocaine. An investigative report from NASA's Office of the Inspector General (OIG) contradicted this denial. The report, based on interviews with two informants, advised that Mr. Corrado had bought, sold, and used cocaine on numerous occasions.

After permitting Mr. Corrado to respond to the OIG report, the Director of Management Operations at Goddard removed Mr. Corrado to promote the efficiency of the service. The Director based this action on a clear nexus between Mr. Corrado's conviction and NASA's mission. She found that Mr. Corrado's conviction cast serious doubt upon his judgment and trustworthiness, both of which were deemed essential for his position. The Director asserted that the conviction caused NASA to lose confidence in Mr. Corrado's judgment with the safety of fellow NASA employees at stake.

Under 5 U.S.C. § 7121(e)(1) (1988), Mr. Corrado contested his removal through the grievance procedures in the collective bargaining agreement between NASA and the Washington Area Metal Trades Council, Mr. Corrado's union. An arbitrator heard the case and ordered NASA to reinstate Mr. Corrado. The arbitrator based its ruling on five findings: First, the arbitrator found that NASA denied Mr. Corrado due process because the notice of proposed removal did not state a nexus between his conviction and the proposed removal. Second, the arbitrator found that NASA's loss of confidence in Mr. Corrado did not satisfy the nexus standard without some showing of decline in Mr. Corrado's job performance. Third, the arbitrator found that Mr. Corrado's misconduct was not so egregious that a nexus could be presumed. Fourth, the arbitrator found that due process barred the Director from considering the OIG report and other evidence unrelated to the specific allegations in the notice of proposed removal. Finally, the arbitrator found the penalty of removal unreasonable.

## Discussion

According to 5 U.S.C. § 7121(f), this court reviews the arbitrator's decision "in the same manner" as decisions of the Merit Systems Protection Board. Accordingly, this court may overturn the arbitrator's ruling only if it is arbitrary, capricious, abusive of discretion, illegal, procedurally deficient, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Title 5 obligates the arbitrator to sustain NASA's removal decision if supported by a preponderance of the evidence. 5 U.S.C. §§ 7121(e)(2), 7701(c)(1)(B) (1988); *Cornelius v. Nutt*, 472 U.S. 648, 651–52, 105 S.Ct. 2882, 2884–85, 86 L.Ed.2d 515 (1985).

### Notice of Proposed Removal

The "nexus" and "notice" requirements of Title 5's Chapter 75 appear in two separate subsections. Section 7513(a) contains the statutory "nexus" requirement. That section requires some nexus between an employee's misconduct and any disciplinary action: "[A]n agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (1988). Nowhere does section 7513(a) require a notice of proposed removal to refer explicitly to this nexus.

Section 7513(b)(1) sets forth a notice procedure for proposing adverse actions against employees. That section requires the agency to give the employee "at least thirty days' advance written notice ... stating the specific reasons for the proposed action." 5 U.S.C. § 7513(b)(1) (1988). A notice of proposed removal is sufficient under the statute when it apprises the employee of the nature of the charges "in sufficient detail to allow the employee to make an informed reply." *Brewer v. United States Postal Service*, 227 Ct.Cl. 276, 647 F.2d 1093, 1097 (1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982); *see also Hayes v. Department of Navy*, 727 F.2d 1535, 1538 (Fed.Cir.1984) (interpreting 5 U.S.C. § 7503(b), which contains a nearly identical notice provision, to be satisfied when employee "knew what charge he had to defend"). Nowhere does section 7513(b) require notice to include explicitly every element of every

charge underlying the proposed action. *See Kochanny v. Bureau of Alcohol, Tobacco & Firearms,* 694 F.2d 698, 703 (Fed.Cir.1982) (chapter 75 does not require notice of proposed removal to state that employee's removal was for "the efficiency of the service"). Instead, as the term "notice" suggests, the employee need only receive enough information to permit preparation of an informed reply.

■ The Fifth Amendment provides essential guarantees of notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Due process thus provides a Government employee: (1) notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to respond. *Id.* As for timing, the Government need only supply these rights before termination. *Id.*

■ Mr. Corrado received sufficient notice in the proposed removal letter. The notice informed Mr. Corrado that his supervisor proposed to remove him because of his arrest and conviction. The notice correctly identified the date and place of Mr. Corrado's arrest, the criminal charges against him, his guilty plea, his conviction, and his sentence. Thus, the notice fully informed Mr. Corrado of the grounds for the proposed removal. The notice of proposed removal clearly identified the details of Mr. Corrado's arrest and conviction. Finally, NASA supplied Mr. Corrado ample opportunities to respond before removal. Neither the statute nor the Constitution require more. Moreover, neither the Fifth Amendment nor the statute require an explicit statement of nexus in the notice of proposed removal.

### Establishment of Nexus

■ Under 5 U.S.C. § 7513(a), NASA must show a connection between the employee's misconduct and the employee's job responsibilities. *Brown v. Department of Transp.,* 735 F.2d 543, 548 (Fed.Cir.1984). To make this showing, NASA emphasized the sensitivity of Goddard's mission. Goddard provides tracking and data for operation of the Space Shuttle, Space Station, and satellite systems. This mission relies on a dependable and uninterrupted supply of electricity. In this context, any mistake in judgment by Mr. Corrado could result in the loss of lives or millions of dollars worth of equipment.

■ Against this background, Mr. Corrado's criminal activities pose threats to Goddard's mission. NASA could no longer trust Mr. Corrado implicitly. The sum, Mr. Corrado's crime casts doubt on his honesty, integrity, and reliability. NASA also has a reasonable interest in preventing the spread of cocaine at critical facilities like Goddard. The nature of the crime indicates a willingness to break the law for personal financial gain.

Furthermore, Mr. Corrado's conviction also creates a potential embarrassment for NASA. To deserve continued funding and support, the public and their representatives must have the utmost confidence in NASA's competence and reliability. Entrusting to a convicted drug dealer unsupervised control over the entire Goddard electrical system and potential responsibility for the safety of persons and equipment could seriously undermine the public's confidence in the agency's ability to perform its mission. NASA need not wait until Mr. Corrado makes a mistake on the job before removing him.

■ Given the level of trustworthiness required by Mr. Corrado's position and consequences of an error in judgment, the Government showed by a preponderance of the evidence the connection between Mr. Corrado's misconduct and his removal to promote NASA's efficiency. An agency's reasonable loss of trust and confidence sufficiently establishes the necessary nexus. *See, e.g., Sanders v. United States Postal Service,* 801 F.2d 1328, 1332 (Fed.Cir.1986).

### Presumption of Nexus

■ A presumption of nexus arises when the employee's misconduct is so egregious that it "speaks for itself." *Hayes,* 727 F.2d at 1539. This court, including its predecessor, the Court of Claims, has consistently held that involvement in drug trafficking, even when limited to off-duty conduct, is

# 528

sufficiently "egregious" conduct to warrant a presumption of nexus. *See Parker v. United States Postal Service*, 819 F.2d 1113, 1116 (Fed.Cir.1987); *Sanders*, 801 F.2d at 1330; *Strothers v. United States*, 220 Ct.Cl. 642, 644, 618 F.2d 121 (1979). Although Mr. Corrado's crime occurred off of Goddard's premises, the egregiousness of the crime and the potential effect on safety inherent in Mr. Corrado's position at Goddard warrant a presumption of nexus in this case.

### Exclusion of Post–Notice Evidence

 Under 5 U.S.C. § 7121(e)(1), arbitrators must apply the same substantive standards that the MSPB would apply if the matter had been appealed to it. *Cornelius*, 472 U.S. at 652, 660, 105 S.Ct. at 2885, 2889. The MSPB reviews *de novo* the merits of an agency's decision to take adverse action against an employee. *Fucik v. United States*, 228 Ct.Cl. 379, 655 F.2d 1089, 1097 (1981); *see also Jackson v. Veterans Admin.*, 768 F.2d 1325, 1329 (Fed.Cir.1985). An arbitrator must do the same. Because it is a *de novo* proceeding, all evidence obtained up to the time of hearing is admissible.

 Thus, the arbitrator had no basis to refuse to consider the OIG report on the ground that the evidence was not before the agency at the time of proposed removal. The report was relevant to the agency's proposal to remove Mr. Corrado because of his conviction. In his response to the proposed removal, Mr. Corrado flatly denied possession of or intention to distribute cocaine. He claimed that his arrest resulted from entrapment and his conviction from a lapse in judgment in entering a plea.

By showing that Mr. Corrado had regularly used, possessed, and sold drugs on other occasions, the OIG report tended to refute Mr. Corrado's assertions. Mr. Corrado's intent was very pertinent to the nexus between his misconduct and the efficiency of the service, not to mention the reasonableness of the removal penalty. The OIG investigation might have produced evidence favorable to Mr. Corrado's position. In any event, the OIG report was relevant to the removal decision and was not barred from consideration by reason of having been obtained after the notice.

### Penalty of Removal

 "[D]etermination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency." *Beard v. General Servs. Admin.*, 801 F.2d 1318, 1322 (Fed.Cir.1986); *see also Parker*, 819 F.2d at 1116. This court defers to an agency's choice of penalty "unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" *Parker*, 819 F.2d at 1116 (quoting *Villela v. Department of Air Force*, 727 F.2d 1574, 1576 (Fed.Cir.1984)). NASA regulations specify that removal is a proper punishment for possession of drugs. NASA Supplement for the Federal Personnel Manual, Supp. No. S–751–2 at 4 (March 24, 1983). Removal also is not disproportionately harsh for the crime of possessing $16,800 worth of cocaine with intent to distribute.

### Conclusion

This court reverses the decision of the arbitrator in all respects. NASA's decision to remove Mr. Corrado is sustained.

### Costs

Each party to bear its own costs.

*REVERSED.*