# United States Court of Appeals for the Federal Circuit

04-3139

SHIRLEY ZINGG,

Petitioner,

v.

DEPARTMENT OF THE TREASURY, IRS.,

Respondent.

C. Robert Collins, Collins & Collins, L.L.P., of Phoenix, Arizona, argued for petitioner.

Michael N. O'Connell, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Franklin E. White, Jr., Assistant Director, and Matthew P. Reed, Trial Attorney.

Petition for review of an arbitrator's decision

# United States Court of Appeals for the Federal Circuit

04-3139

SHIRLEY ZINGG,

Petitioner,

v.

DEPARTMENT OF THE TREASURY, IRS,

Respondent.

_____

DECIDED:  November 2, 2004

_____


Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The petitioner Shirley Zingg challenges her removal by the Internal Revenue Service ("IRS") for improperly disclosing tax information relating to 1300 taxpayers. Nat'l Treasury Employees Union v. Dep't of the Treasury, IRS, NB 2151 (May 23, 2003) (Brand, Arb.). She contends that the arbitrator erred in concluding that her removal promoted the efficiency of the service, that the removal was timely made, and that the penalty of removal was reasonable. We affirm.

I

The underlying facts are, as the arbitrator stated, "almost entirely undisputed." The arbitrator made the following findings, which Zingg does not challenge here.

Zingg was employed as a secretary in an IRS office in Arizona, where she was responsible for opening mail and posting money. She opened a letter from a Mr. Wewee, an accountant and a former IRS employee, requesting the previous ten years of tax returns for various taxpayers. The request included authorization from the taxpayers to provide the returns. Because Zingg believed that her office would not handle the request "expeditiously," she "took it upon herself to provide these returns to Mr. Wewee."

Some of these returns were kept outside of her office in the "retention register" and she requested and received from that source (at the Ogden Service Center) the "retention register transcripts." Each transcript consisted of a cover sheet showing the social security number and name of the taxpayer, followed by "a copy of a microfilm record that contains the requested taxpayer information. Information in the retention register is stored by social security number . . . . Because the requested taxpayer's record does not take up an entire page, taxpayers whose social security number are above and below the requested taxpayer's (on the retention register) also appear on the single page. The number of taxpayers who appear on any one page varies."

"When the retention register transcripts came in, [Zingg] checked the cover sheet to be sure it was for a requested taxpayer. She then looked at the retention register transcripts and saw they had other taxpayer data. Although the data appears in the order of social security numbers, [Zingg] testified that she simply assumed all of the other taxpayers had something to do with the taxpayer whose information she had requested. She sent all of the unsanitized retention register transcripts to Mr. Wewee."

04-3139                                            2

Wewee then began directly requesting from Zingg tax returns for other taxpayers, which she supplied. She followed the same pattern in doing so and "sent him tax information on approximately 1,300 taxpayers whose information he did not request and which information he was not entitled to receive."

An IRS regulation required that "the taxpayer authorization to release the data to a third party must be received within 60 days of the date the taxpayer signed it." Some of the authorizations Wewee sent Zingg were not so signed. By letter the IRS's Ogden Service Center rejected some of Wewee's requests and advised him of the 60-day signature limitation. "When he received this letter Mr. Wewee wrote directly to [Zingg] saying: 'You and I both know the limited power is valid and I hereby request you resubmit the request and now demand for the transcripts for years 1989 through 99 for the enclosed taxpayer's power of attorney . . . .' [She] accepted Mr. Wewee's assertion that his requests were valid, ignored the letter sent by the Service Center, made no inquiries of her supervisor or IRS disclosure personnel, and sent Mr. Wewee the retention register transcript for [the] Taxpayer [involved]." (footnote omitted).

Some months later Wewee informed the Treasury Department that "unauthorized disclosures were being made to him." The IRS sent letters to each of the 1300 taxpayers whose "confidential tax information [was] disclosed," informing them of that fact and offering them "the statutory penalty of $1,000. Just contacting the taxpayers was a major effort. Ultimately, the Agency had to pay approximately $830,000 in penalties. In addition, the Agency was named in a class action lawsuit because of [Zingg's] disclosures." The record also shows that an article in a local newspaper discussing the disclosures was "entitled 'IRS Accused of Violating Privacy Act.'"

Following the Treasury Department's investigation and after full administrative proceedings, the IRS removed Zingg. This action was based upon two charges, both of which the agency sustained: (1) "the unauthorized disclosure of return and return information of approximately 1,300 taxpayers" and (2) furnishing taxpayer information to Wewee pursuant to taxpayer authorizations that had expired.

The IRS official who made the decision to remove Zingg (known as the deciding official) "concluded that a removal will promote the efficiency of the Service and that a lesser penalty would be inadequate." He stated:

> The fact that you have made such egregious disclosures causing notoriety and monetary loss to the government undermines our effectiveness and credibility in delivering our mission to the public we serve. Protecting taxpayer privacy and safeguarding taxpayer information is a public trust that must not be compromised. Your actions have undermined my confidence in your ability to either perform your job or otherwise render future effective service to the government.

Zingg elected to challenge her removal by invoking union arbitration under the collective bargaining agreement. After an evidentiary hearing, the arbitrator upheld the removal. In a detailed opinion, the arbitrator first stated that "[t]he Union concedes, as it must, that the Agency proved [Zingg] committed the specific acts charged . . . and that there is a nexus between [Zingg's] proven conduct and the efficiency of the Service." He then reviewed each of the twelve factors that the Board, in Douglas v. Veterans Admin., 5 M.S.P.B. 313, 331-32 (1981), had directed deciding officials to consider in determining the appropriate penalty. These are the so-called "Douglas factors," the use of which this court repeatedly has approved as a basis for determining the reasonableness of a penalty. See, e.g., Nagel v. Dep't of Health & Human Servs., 707 F.2d 1384, 1386-88 (Fed. Cir. 1983).

The arbitrator rejected the Union's contention that the deciding official had misapplied the Douglas factors. With respect to the first factor, "[t]he nature and seriousness of the offense," the arbitrator stated:

> [K]eeping taxpayer records confidential is a core value and legal requirement of the Agency. It is also a critical element (#6) in [Zingg's] job requirements. Employees receive annual training and updates on disclosure. [Zingg] concedes she is well aware of the need to maintain the confidentiality of taxpayer records . . . . According to the deciding official, this was the worst case of improper disclosure he had seen in 29 years with the Agency. It is clear that [Zingg's] improper disclosures were extremely serious.

The arbitrator also rejected the Union's argument that the IRS "failed to administer the adverse action 'as timely as possible.' As the Agency points out, there is no clear claim of harmful procedural error. Nor could there be. There was no loss of evidence or memories . . . . The evidence shows there were Grand Jury proceedings that delayed the Agency's opportunity to see the specific evidence upon which it based the removal. That accounts for approximately a year of the delay."

The arbitrator's "AWARD" stated:

> 1. The removal of Shirley Zingg was for such cause as will promote the efficiency of the service.
> 2. The Union has failed to prove the Agency violated its obligation to administer the removal as timely as possible.

Zingg filed a petition to review the arbitrator's decision with the Court of Appeals for the Ninth Circuit, which transferred the case to this court. Our jurisdiction rests on 28 U.S.C. § 1295(a)(9) and 5 U.S.C. §§ 7121(f), 7703.

## II

Under 5 U.S.C. § 7121(f), in this type of case "this court reviews the arbitrator's decision 'in the same manner' as decisions of the Merits Systems Protection Board.

04-3139                                                                 5

Accordingly, this court may overturn the arbitrator's ruling only if it is arbitrary, capricious, abusive of discretion, illegal, procedurally deficient, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Title 5 obligates the arbitrator to sustain [the agency]'s removal decision if supported by a preponderance of the evidence. 5 U.S.C. §§ 7121(e)(2), 7701(c)(1)(B) (1988)." Brook v. Corrado, 999 F.2d 523, 526 (Fed. Cir. 1993) (case citations omitted).

A. Zingg first challenges the arbitrator's determination, which upheld the IRS's ruling, that her removal will promote the efficiency of the service. She contends that her unauthorized disclosures resulted from the failure of the personnel who supply the retention records transcript to alert the recipients that the files contained tax information for other taxpayers, or to excise such material. According to Zingg, her removal will not correct this alleged defect in the IRS's operation.

Although Zingg frames the issue in terms of promoting the efficiency of the service, her argument really is that the IRS did not show a nexus between her removal and its efficiency. The nexus requirement – that there be "a connection between the employee's misconduct and the employee's job responsibilities," Brook, 999 F.2d at 527 – is inherent in the limitation in 5 U.S.C. § 7513(a) that an agency may discipline an employee "only for such cause as will promote the efficiency of the service." Zingg's basic complaint is an alleged lack of connection between her removal for misconduct and the efficiency of the service. Cf. James v. Dale, 355 F.3d 1375, 1378 (Fed. Cir. 2004) (analyzing nexus for association with known or suspected law violator). The removal of an employee who, for whatever reason, should not continue in her position necessarily promotes the efficiency of the service. Indeed, "the requisite nexus is

presumed in cases where the employee's misconduct is so egregious that it speaks for itself." King v. Frazier, 77 F.3d 1361, 1364 (Fed. Cir. 1996).

The government contends that Zingg has waived this contention because she "failed to present any argument or evidence to the arbitrator challenging the existence of a nexus between her conduct and the IRS's removal." This conclusion is supported by the arbitrator's statement that "[t]he Union [which represented Zingg before him] concedes, as it must . . . that there is a nexus between [Zingg's] proven conduct and the efficiency of the Service." Indeed, Zingg in effect concedes the point when her reply brief states that the government's position "ignores the legal requirement that the IRS has the burden to prove the nexus and not Ms. Zingg." The question, of course, is not who has the burden to prove nexus but whether she raised before the arbitrator the claim that nexus had not been proven.

On this record, we must conclude that Zingg did not raise the issue before the arbitrator. Zingg "cannot challenge upon appeal what [s]he failed to challenge before the [arbitrator] . . . . Therefore, in the face of [Zingg's] failure to make such arguments earlier, we will not consider any error in the [arbitrator's] decision based on this argument, for it is deemed waived." White v. Dep't of Justice, 328 F.3d 1361, 1372 (Fed. Cir. 2003) (citation and footnote omitted).

B. Zingg's complaint about the IRS's delay in taking disciplinary action need not detain us long. Almost two years elapsed between her misconduct and her removal. As the arbitrator pointed out in rejecting this contention, approximately a year of that time is attributable to grand jury proceedings involving her misconduct, which denied the IRS access to the evidence it relied upon in removing her. In addition, as the arbitrator

noted, the Union was responsible for some of the delay. Finally, and most significantly, she makes no showing and does not even claim that the delay prejudiced her.

To the extent that Zingg contends that the delay violated the collective bargaining agreement provision that IRS disciplinary action would be "administered as timely as possible," we agree with the arbitrator that the "Union failed to prove the Agency violated" that provision. Indeed, as explained above, any delay in removing Zingg was not unreasonable.

C. Zingg's principal contention is that the penalty of removal was "too harsh" and therefore was unreasonable.

"[D]etermination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency. This court defers to an agency's choice of penalty unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offence that it amounts to an abuse of discretion." Brook, 999 F.2d at 528 (citations and internal quotations omitted). We cannot say that the IRS abused its discretion or otherwise erred in concluding that removal was the appropriate penalty in this case.

As the arbitrator concluded, Zingg's "improper disclosures were extremely serious." As he pointed out, "keeping taxpayer records confidential is a core value and legal requirement" of IRS operations. Indeed, unauthorized disclosure of tax returns or taxpayer information is a crime punishable by up to a year's imprisonment. 26 U.S.C. § 6103(a) (2002); 18 U.S.C. § 1905 (2003). Maintaining such confidentiality is critical to our system of taxpayer disclosure of financial information in tax returns. "Employees

receive annual training and updates on disclosure. [Zingg] concedes she is well aware of the need to maintain the confidentiality of taxpayer records."

Zingg's sweeping unauthorized disclosures involved 1300 taxpayers. The result was that the IRS offered statutory $1,000 penalties to the affected taxpayers, see 26 U.S.C. § 7431(c)(1)(A), and incurred costs of more than $800,000. The IRS was subject to the unfavorable publicity of a newspaper story about the disclosures, which also were the basis of a class action lawsuit involving the IRS.

The IRS's determination that Zingg was unsuitable for further employment finds additional support in her failure to observe the agency's requirement that taxpayer written authorizations for the IRS to disclose returns and taxpayer information are valid for only sixty days after signing. Although Wewee informed Zingg that the IRS had rejected his requests for taxpayer returns because the authorizations he submitted had expired, she accepted his statement that the untimely authorizations were in fact valid, and sent him additional taxpayer information based on the expired authorizations.

In his notice of removal, the deciding official stated that Zingg's "egregious disclosures" had "undermined my confidence in your ability to either perform your job or otherwise render future effective service to the government." We agree with the arbitrator that the IRS "properly considered" its "lack of confidence in [Zingg's] ability to do her work without serious error." This lack of confidence is a proper factor for the IRS to consider in determining the appropriate penalty. See Brook, 999 F.2d at 527; Crofoot v. Gov't Printing Office, 823 F.2d 495, 498 (Fed. Cir. 1987).

Zingg stresses that her disclosures were made inadvertently and not intentionally. That, however, neither reduces the seriousness of her offense nor affects

her suitability for continued IRS employment. Indeed, if her disclosures had been intentional, it seems likely that she would have been criminally prosecuted; the matter was presented to a grand jury, but no indictment was returned.

As noted, the arbitrator reviewed in detail the agency's treatment of each of the twelve Douglas factors. Zingg apparently contends that the IRS improperly weighed and balanced those factors in their application to this case. Douglas, however, only requires the agency to consider those factors in determining the appropriate penalty. It does not mandate that any particular factor be given special treatment, or that all factors be considered in every case without regard to their relevancy. See Nagel, 707 F.2d at 1386.

The determination of which Douglas factors apply in a particular case and the weight to be given the relevant factors lies primarily within the agency's broad discretion to determine the appropriate penalty for a particular case. See id. The IRS did not abuse its discretion in its treatment of the Douglas factors.

## CONCLUSION

The decision of the arbitrator sustaining the IRS's removal of Zingg is

AFFIRMED.