# United States Court of Appeals for the Federal Circuit

03-3333

MICHAEL ELMORE,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION,

Respondent.

Michael Moulis, Moulis & Associates, P.A., of Fort Lauderdale, Florida, argued for petitioner.

Steven J. Abelson, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent.  With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director and Todd M. Hughes, Assistant Director.

Appealed from:  United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

03-3333

MICHAEL ELMORE,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION,

Respondent.

_____

DECIDED:  August 26, 2005

_____


Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The petitioner, Michael Elmore, contends that he was twice "constructively demoted" in connection with his two transfers between two locations where he worked. We reject on the merits Elmore's contention that his first transfer constituted a "constructive demotion," and conclude that his claim regarding the second transfer is not properly before us because he failed to raise it before the Merit Systems Protection Board's administrative judge who heard his case.  See Elmore v. Dep't of Transp., No. AT-0752-02-0376-I-1 (M.S.P.B. July 5, 2002) ("Initial Decision").  We therefore affirm the Board's dismissal of his appeal of these alleged constructive demotions.  Elmore v. Dep't of Transp., No. AT-0752-02-0376-I-1 (M.S.P.B. July 16, 2002) ("Final Order") (denying Elmore's petition for review and making initial decision final).

I

A. The underlying facts are undisputed. Elmore was an air traffic controller working at Miami International Airport. On June 8, 1997, he was detailed as a supervisory air traffic controller to Tamiami Airport, a smaller facility in the Miami area. Although the position to which he was detailed was classified at a lower grade (FG-12) than the position he had previously held at Miami International (FG-14), Elmore retained the higher pay of his previous position. Initial Decision at 1-2. The detail was scheduled to end on October 6, 1997.

In September 1997, a vacancy announcement was made for a supervisory air traffic controller at Tamiami at grade FG-12, the grade of the position to which Elmore was detailed. He applied for and was selected for that position in November 1997, with "pay retention" — in other words, he continued to receive the pay of the FG-14 position he had held at Miami International. Id.

Effective October 1, 1998, the Federal Aviation Administration instituted a different pay plan for air traffic controllers, placing them in various "bands" rather than in specified grade levels. As a result, Elmore's position at Tamiami was changed from FG-12 to "J Band" classification, and his annual basic pay was increased from $68,948 to $72,881. Initial Decision at 2. The record shows that in addition to his basic pay, Elmore received a "locality adjustment" as part of his salary, and this "adjustment" also increased from $5,419 to $5,728.

In June 1999, at Elmore's request, he was returned to his old air traffic controller position at Miami International. This resulted in his transfer from the "J Band" classification he held as a supervisor at Tamiami, to the lower "I Band" classification that

now covered his old position. However, because Miami International was a higher-level facility than Tamiami, Elmore's transfer to the lower-graded position nevertheless increased his annual basic pay from $74,011 to $75,269. Id. The "locality adjustment" that Elmore received in addition to his basic pay also increased from $6,298 to $6,405.

B. Elmore filed an appeal to the Board challenging his "constructive demotion" effective "November 1997." He alleged that he was "compelled to accept the position since his supervisor made the assignment and he was required to accept the position. Additionally, Mr. Elmore was compelled to accept the position out of fear of losing future career progressing opportunities."

In his initial decision, the Board's administrative judge dismissed the appeal for lack of jurisdiction. He held that Elmore was not constructively demoted when he was allegedly "'reassigned' to the Tamiami facility on November 9, 1997. . . . [A]ppellant was indeed changed to lower grade in November of 1997, but that demotion was actual, not constructive, and was effected at his own request pursuant to his application under the agency's career enhancement program to gain supervisory experience." The administrative judge concluded, "The foregoing facts fail to constitute a nonfrivolous allegation of involuntariness or otherwise indicate that appellant was subjected to an appealable adverse action." Initial Decision at 2-3.

Elmore sought Board review of the initial decision. He alleged that "the Agency acted inappropriately by making [Elmore] a permanent employee of the Tamiami Air Traffic Control Tower while he was on a temporary assignment away from the Miami Air Traffic Control Tower. This reassignment/action came on the heels of an Agency wide reclassification of the Air Traffic Control pay system." He also alleged that when he was

"reassigned to the Miami International Airport as an Air Traffic Control Specialist[,]" "[a]s a result of this transfer, Mr. Elmore was demoted, despite the fact that his base pay had increased." The Board denied review.

II

A. During the proceedings before the Board's administrative judge, Elmore never contended that his June 1999 retransfer from Tamiami to Miami International constituted a "constructive demotion." He argued only that his November 1997 "transfer" to Tamiami should be so treated. In his notice of appeal to the Board, Elmore stated that "the Agency acted inappropriately in that [it] constructively demoted Appellant by making him a permanent employee of the Tamiami Air Traffic Control tower while he was on a temporary assignment away from the Miami Air Traffic Control Tower. This reassignment/action came on the heels of an Agency wide reclassification of the Air Traffic Control pay system. . . . Appellant requests that this court reinstate Appellant to the pay scale he would have otherwise received had he not been made a permanent employee at the Tamiami Air Traffic Control Tower." In his response to an order of the administrative judge, Elmore further "contend[ed] that he was constructively demoted when he was compelled to accept the assignment at the Tamiami Tower." Given that Elmore did not challenge his later reassignment to Miami International on constructive demotion grounds, it is not surprising that the administrative judge did not discuss that issue in his initial decision dismissing Elmore's appeal.

Elmore's appeal to the Board primarily challenged the November 1997 transfer, repeating once again that "the Agency acted inappropriately in that [it] constructively demoted Appellant by making him a permanent employee of the Tamiami Air Traffic

Control tower while he was on a temporary assignment away from the Miami Air Traffic Control Tower. This reassignment/action came on the heels of an Agency wide reclassification of the Air Traffic Control pay system." In his appeal to the Board, Elmore also alleged that "as a result of" his later transfer from Tamiami back to Miami International, he "was demoted, despite the fact that his base pay had increased." He makes the same two arguments verbatim in his appeal to this court.

We have recognized that a litigant who fails properly to raise an issue before an administrative agency ordinarily is precluded from litigating that issue before us. Wallace v. Dep't of the Air Force, 879 F.2d 829, 832 (Fed. Cir. 1989); Thomas v. Gen. Servs. Admin., 794 F.2d. 661, 665-66 (Fed. Cir. 1986); James v. F.E.R.C., 755 F.2d 154, 155-56 (Fed. Cir. 1985). Where, as here, the Board denied review of the administrative judge's initial decision, this court will not consider issues not raised before the administrative judge. Wallace, 879 F.2d at 832; Meglio v. Merit Sys. Prot. Bd., 758 F.2d 1576, 1577 (Fed. Cir. 1984). Elmore offers no excuse or explanation for his failure to raise the issue of his transfer from Tamiami back to Miami International before the administrative judge. Accordingly, we decline to consider Elmore's argument that his reassignment from Tamiami to Miami International constituted a constructive demotion, because he failed to raise that issue before the administrative judge, and the Board did not discuss it in refusing to review the administrative judge's decision. See Final Order at 1-2.

B. The Board developed the concept of "constructive demotion" to deal with a specific situation arising from an employee's reassignment. See generally Russell v. Dep't of the Navy, 6 M.S.P.B. 585 (1981). "[T]he Board normally lacks jurisdiction to

review the reassignment of an employee who does not suffer a loss of grade or pay." Walker v. Dep't of the Navy, 106 F.3d 1582, 1584 (Fed. Cir. 1997). However, cases have arisen where, although an employee was transferred without loss of grade or pay, the practical effect of such transfer was to deny the employee a promotion he would have received if he had not been transferred, i.e., where his former position was about to be reclassified to a higher grade. The Board accordingly concluded in Russell that "where an employee is reassigned from a position which due to issuance of a new classification standard or correction of classification error is worth a higher grade, the employee meets the legal and qualification requirements for promotion to the higher grade, and where the employee who held that position is permanently reassigned to a position classified at a grade level lower than the grade level to which the employee would otherwise be promoted, then the employee is reduced in grade." 6 M.S.P.B. at 594-95.

As this court has stated, "[t]o establish a constructive demotion claim, the employee must demonstrate that (i) the employee was reassigned from a position which, due to the issuance of a new classification standard or correction of classification error, is entitled to a higher grade, and (ii) the employee meets the legal and qualification requirements for promotion to the higher grade. By meeting these requirements, the employee demonstrates that the previous position should have been classified at a grade or pay higher than that of the position to which the employee was reassigned; thus, the reassignment constituted a 'constructive' demotion." Walker, 106 F.3d at 1584.

In Hogan v Department of the Navy, 218 F.3d 1361, 1363 (Fed. Cir. 2000), this court explained that "constructive demotion cannot occur unless a position is reclassified to correct an error in the original classification, or a new classification standard has been issued[.]" See also Artmann v. Dep't of the Interior, 926 F.2d 1120, 1122-23 (Fed. Cir. 1991); Manlogon v. Envtl. Prot. Agency, 87 M.S.P.R. 653, 657-58 (M.S.P.B. 2001).

It is unclear whether the Federal Aviation Administration's new pay system for air traffic controllers, effective October 1, 1998, under which pay "bands" were substituted for the prior pay grades, constituted a "reclassification, or a new classification standard" under Hogan for constructive demotion purposes. The new system was designed, not to correct classification errors, but to institute a new basis for determining pay. "For there to be a constructive demotion under the Board's standards, the higher grade must result from a classification error or a change in classification standards and not from a planned management action." Welch v. Dep't of the Army, 323 F.3d 1042, 1045 (Fed. Cir. 2003). Unfortunately, the Board did not address that issue here.

In any event, Elmore has not shown that he was constructively demoted. An essential element of a "constructive demotion" is that the employee's transfer must have been involuntary. See Hogan, 218 F.3d at 1364. The Board has further clarified that these constructive demotion cases "arise when an agency reassigns an employee out of a position" that has been or is being upgraded. Id.; see Manlogon, 87 M.S.P.R. at 658. If an employee voluntarily seeks transfer out of a position that subsequently is reclassified to a higher grade, he cannot properly complain that his transfer was a demotion. Cf. Torain v. United States Postal Serv., 84 F.3d 1420, 1423 (Fed. Cir. 1996)

(holding that no constructive demotion occurred where an employee, to avoid the possibility of reassignment, volunteered for a lower graded position before the agency took any action regarding his potential reassignment).

The "transfer" that Elmore contends was a "constructive demotion" was not his initial temporary detail to Tamiami, but his subsequent November 1997 appointment to a permanent position there as a supervisory air traffic controller. Although Elmore's legal theory is not fully articulated, he apparently contends that if he had not been thus permanently assigned, he would have returned to his old position at Miami International immediately after his detail ended on October 6, 1997, and that when the new pay system was introduced a year later, the pay of his position at Miami would have increased significantly.

Nothing in the record, however, shows or even suggests that Elmore's assignment to his new permanent supervisory position at Tamiami was anything other than a voluntary act on his part. The Federal Aviation Administration issued a formal vacancy announcement for the supervisory air traffic controller position at Tamiami, which contained detailed instructions governing the submission of applications for the position. The Standard Form 50-B memorializing Elmore's appointment to the position stated that he was "SELECTED FROM" the foregoing vacancy announcement, and described the action being taken as "CHANGE TO LOWER GRADE." In other words, Elmore applied for and was selected for that position, which was graded lower than the position he had held at Miami International. Elmore's reassignment to the supervisory position at Tamiami therefore represented his own voluntary action. As the administrative judge concluded, in holding that Elmore had not shown that he was

constructively demoted when he was thus reassigned, Elmore "was indeed changed to lower grade in November of 1997, but that demotion was actual, not constructive, and was effected at his own request pursuant to his application under the agency's career enhancement program to gain supervisory experience." Initial Decision at 2.

Elmore contends that he "was compelled to accept the position since his supervisor made the assignment" and that he accepted it "out of fear of losing future career progressing opportunities." These allegations, however, do not contradict the evidence in the record that Elmore's assignment to the supervisory position at Tamiami resulted from a voluntary act on his part. His claims do not establish that his assignment was involuntary. Cf. Torain, 84 F.3d at 1421-23 (assignment was not involuntary where employee "requested and accepted" a lower-graded position based on the perceived "threat that he would be involuntar[ily] reassigned to another geographic location" at some future time).

Since Elmore failed to make a non-frivolous allegation that he was subject to a constructive demotion, the Board correctly dismissed his appeal for lack of jurisdiction because he was not subjected to any adverse action.

## CONCLUSION

The order of the Merit Systems Protection Board dismissing Elmore's appeal is

AFFIRMED.

03-3333                                  9