NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**SHERRY G. LUCAS,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

_____

2023-2345

_____

Petition for review of the Merit Systems Protection Board in No. CH-0752-16-0448-I-1.

_____

Decided:  April 29, 2024

_____

SHERRY G. LUCAS, Calumet City, IL, pro se.

MATNEY ELIZABETH ROLFE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

_____

Before REYNA and CUNNINGHAM, *Circuit Judges*, and ALBRIGHT, *District Judge*.[1]

PER CURIAM.

Ms. Sherry G. Lucas petitions for review of a Merit Systems Protection Board ("Board") decision affirming the United States Postal Service's removal of Ms. Lucas from her position as Manager of Customer Service, EAS-22, at the Gary, Indiana Post Office for insubordination. *Lucas v. U.S. Postal Serv.*, No. CH-0752-16-0448-I-1, 2017 WL 1148037 (M.S.P.B. Mar. 23, 2017) (App'x 23–42[2]); *Lucas v. U.S. Postal Serv.*, No. CH-0752-16-0448-I-1, 2023 WL 4274177 (M.S.P.B. June 29, 2023) (App'x 63–75). We *affirm*.

## I. BACKGROUND

Ms. Lucas began her employment with the Postal Service in 1998. App'x 11 ¶ 1. At the time of her removal, she served as Manager of Customer Service at the Gary, Indiana Post Office. App'x 11 ¶ 4–5; App'x 13 ¶ 21.

In 2013, the National Association of Letter Carriers Union ("NALC") filed a class action grievance alleging, *inter alia*, that the Postal Service—through the actions of Ms. Lucas—had violated provisions of the National Agreement, the Joint Statement on Violence and Behavior in the Workplace, and certain other policies. App'x 11 ¶ 6. On February 12, 2014, the agency and NALC entered into a

---

[1]    Honorable Alan D Albright, District Judge, United States District Court for the Western District of Texas, sitting by designation.

[2]    Respondent submitted appendix pages 1 through 75 with its brief. Petitioner submitted additional appendix pages numbered 76 through 138 with her reply brief. Because they are numbered consecutively, we refer to these pages as a single appendix.

pre-arbitration settlement agreement resolving the grievance. App'x 12 ¶ 8. The agreement provided that Ms. Lucas would "make a public apology to letter carriers in the Gary office . . . ." *Id.* (citing Agency File ("AF"), Tab 4N).

In March 2014, the NALC filed a grievance protesting certain contractual violations by the agency, including Ms. Lucas's failure to comply with the settlement agreement. App'x 12 ¶ 9. The NALC contended that a talk Ms. Lucas gave to letter carriers in Gary did not constitute the apology agreed upon in the settlement agreement. AF, Tab 4M at 5. After the NALC and the agency were unable to resolve the grievance, they appealed to arbitration. App'x 12 ¶ 10. In 2015, the arbitration award issued, and the arbitrator agreed with the NALC that Ms. Lucas's talk failed to provide the agreed-upon apology. App'x 12 ¶¶ 12–13. The arbitrator directed Ms. Lucas to issue a public apology to letter carriers in the Gary office and provided the specific text for her to read. App'x 12 ¶ 12; IAF, Tab 4M at 33.

Labor Relations Specialist Mark Moore also advised Ms. Lucas that she was required to issue the apology set forth by the arbitrator. App'x 13 ¶ 14. She refused. App'x 13 ¶ 15. On October 28, 2015, Acting Postmaster Bobby Goins twice ordered Ms. Lucas to issue the apology. App'x 13 ¶ 16. Similarly, Acting Manager of Post Office Operations Keith Blane told Ms. Lucas twice that she had to give the apology by October 30. App'x 13 ¶ 17. On October 29, Mr. Goins again directed Ms. Lucas to give the apology by October 30 and further explained that appropriate action would be taken if she refused. App'x 13 ¶ 18. Ms. Lucas continued to refuse to apologize. App'x 25.

In December 2015, Mr. Goins issued Ms. Lucas a notice of proposed removal charging her with "Unacceptable Conduct – Insubordination," based on her failure to comply with the arbitrator's decision and subsequent orders. App'x 101–106. Ms. Lucas responded to the notice through her union representative. App'x 84. In this response, Ms.

Lucas made several arguments, including "that she did not make the alleged statements" and that "it violated her [r]eligious beliefs to lie," that the agency had engaged in religious discrimination, and that her removal "violat[ed] [] several of the *Douglas* [f]actors." App'x 84–86. In May 2016, the agency issued a letter of decision finding that the charge was supported and that the evidence warranted her removal. App'x 1.

Ms. Lucas appealed her removal to the Board, where she was represented by counsel. App'x 6–9. Shortly after filing, the administrative judge entered an order directing Ms. Lucas to "specifically identify whether she is alleging religious discrimination as an affirmative defense and if so the factual bases for her claim on these matters," as well as to identify any other affirmative defenses with specificity.[3] App'x 111. Finally, the order advised Ms. Lucas on "the burdens of proof concerning the affirmative defense alleged by the appellant and what is necessary for her to prove her defense."[4] App'x 112. Ms. Lucas later confirmed that she "is waiving any affirmative defenses." App'x 17; App'x 51 n.1 ("Appellant acknowledges that her original representative represented that no affirmative defenses would be filed . . . .").

In March 2017, the Board issued its initial decision affirming the agency's decision to remove Ms. Lucas. App'x

---

[3]    The order noted that Ms. Lucas may have been raising "religious discrimination as an affirmative defense," explaining the "appeal form state[d] the appellant's religion barred her from telling a 'lie' and thus she could not comply with management's instruction for her to implement an arbitrator's decision." App'x 111.

[4]    Among the defenses detailed, the order explained that Ms. Lucas could "assert that the agency failed to accommodate her religious beliefs . . . , even if the reasons for her discharge were otherwise proper." App'x 117.

23–24. The administrative judge first held that the agency met its burden to prove insubordination, defined as "the willful and intentional refusal to obey an authorized order of a superior officer which the officer is entitled to have obeyed." App'x 27. The administrative judge rejected Ms. Lucas's assertions that she was not bound by the arbitration award or that the arbitrator lacked the authority to require her to make a public apology. App'x 29–31. The administrative judge then determined the agency established the necessary nexus between the sustained charge and a legitimate government interest, such as the efficiency of the service. App'x 31–32. Finally, the administrative judge held that the agency properly considered the *Douglas* factors to determine the appropriate penalty and that removal did not exceed the limits of reasonableness. App'x 36.

Ms. Lucas petitioned for review of the initial decision, making a number of additional arguments. App'x 45. In her petition, she argued—for the first time—that "Federal employees cannot be compelled to say something in violation of their First Amendment Rights." App'x 51. Therefore, she asserted that agency management "lacked the lawful authority to compel [Ms. Lucas] to issue an apology in violation of her First Amendment rights . . . ." App'x 54. She acknowledged that she had waived her religious discrimination defense but argued that she does not consider "challenging the validity of [the] order on First Amendment grounds" to be an affirmative defense. App'x 51 n.1 (emphasis omitted).

In the Final Order, the Board denied the petition and affirmed the initial decision, "conclud[ing] that the petitioner has not established any basis under [5 C.F.R. §] 1201.115 for granting the petition for review." App'x 64. The Board found that Ms. Lucas had not raised her First Amendment argument below and held that "she may not raise it for the first time on review." App'x 68.

Ms. Lucas timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

We set aside a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Standley v. Dep't of Energy*, 26 F.4th 937, 942 (Fed. Cir. 2022), *cert. denied*, 142 S. Ct. 2873 (2022).

In her briefing before this court, Ms. Lucas asserts that she "had the right to refuse to issue the ordered apology on religious grounds" and that the Board erred by finding she waived or forfeited the argument. Pet'r's Br. 2. In addition, she asserts that "[t]he punishment exceeds the bounds of reasonableness" and "should have been mitigated under the *Douglas* [f]actors." *Id.*

### A.

First, we address Ms. Lucas's constitutional argument. Ms. Lucas asserts she "had the right to refuse to issue the apology on religious grounds under the First Amendment" because "it was against [her] religious belief to issue a false statement." Pet'r's Br. 2. She argues that "[a]n order is not authorized if it requires an employee to give up their Constitutional rights." *Id.* (citing *Garrity v. New Jersey*, 385 U.S. 493 (1967)). Because agency "[m]anagement had no authority to order [her] to violate [her] Constitutionally protected religious beliefs . . ., [she] did not commit insubordination." *Id.*

Before addressing the merits of Ms. Lucas's argument, we must determine whether Ms. Lucas properly raised this argument before the Board. *See Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989) ("Ordinarily, appellate courts refuse to consider issues not raised before an administrative agency."). The Board declined to address

Ms. Lucas's First Amendment argument in her petition for review, finding that she had not raised it below and "may not raise it for the first time on review." App'x 68. On appeal, the U.S. Postal Service asserts that "the MSPB did not err by failing to address Ms. Lucas's religious liberties claims" because "[t]he MSPB is under no obligation to entertain arguments that were raised for the first time on appeal." Resp't's Br. 8. Ms. Lucas insists that "[t]he MSPB's holding that this issue was not raised at hearing level is just wrong." Pet'r's Br. 2. As explained below, we hold that the Board did not abuse its discretion by declining to address Ms. Lucas's First Amendment argument.

Ms. Lucas asserts she raised her First Amendment argument in several places: "It was in the charging letter[;] it was set out in the response to the charging letter[; and] it was noted . . . in the decision letter and in hearing testimony." Pet'r's Br. 2. However, all of these instances "either were not sufficiently explicit or were not before the Board." *Wallace*, 879 F.2d at 832. The charging letter, the response to the charging letter, and the decision letter do not constitute statements properly raised before the Board. *See id.* (holding that a statement made to the agency in response to its notice of proposed removal was not a statement made before the Board). Moreover, the hearing testimony confirmed that the issue was not raised "with sufficient specificity and clarity," and "[t]he Board cannot be faulted for refusing to consider the issue." *Wallace*, 879 F.2d at 832; *see also* App'x 131–133.

Ms. Lucas failed to timely raise her First Amendment argument before the administrative judge, raising it for the first time before the Board in her petition for review. *See* Initial Appeal File ("IAF"), Tab 16 at 5–6 (pre-hearing submission presenting issues without raising First Amendment argument); IAF, Tab 24 at 4–15 (closing brief challenging orders to apologize on several bases but failing to raise First Amendment argument); App'x 54–57 (petition for review raising this First Amendment argument).

Instead, her argument before the administrative judge focused on whether the National Agreement requiring compliance with arbitration awards applied to Ms. Lucas. IAF, Tab 24 at 4–15. The Board properly declined to review this newly raised First Amendment issue. *See Carson v. Dep't of Energy*, 398 F.3d 1369, 1376 (Fed. Cir. 2005) (citing *Banks v. Dep't of the Air Force*, 4 M.S.P.R. 268, 271 (1980)); App'x 68. The Board generally does not address issues not adjudicated by the administrative judge unless there is "[n]ew and material evidence or legal argument . . . that, despite the petitioner's due diligence, was not available when the record closed." 5 C.F.R. § 1201.115 (listing criteria for granting a petition for review). Ms. Lucas did not contend that there was new and material evidence or argument that was not available when the record closed. *See* App'x 54–57.

Ms. Lucas may not raise her First Amendment argument for the first time in this court. *See Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319, 1323 (Fed. Cir. 2012). "Where, as here, the Board denied review of the administrative judge's initial decision, this court will not consider issues not raised before the administrative judge." *Elmore v. Dep't of Transp.*, 421 F.3d 1339, 1342 (Fed. Cir. 2005). "We discern nothing in this case . . . that induces us to depart from the general principle and determine an issue that was not properly raised before or decided by the Board." *Wallace*, 879 F.2d at 833.

Ms. Lucas's argument does not fall into any of the categorical exceptions we have recognized to the general requirement to raise issues below. Although Ms. Lucas appears before us pro se, she was represented by counsel before the Board. App'x 9. Accordingly, we do not apply the "less demanding standard" for pro se litigants "in requiring that . . . issue[s] have been raised explicitly below." *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (en banc), *superseded on other grounds by* Pub. L. No. 107–330, § 402(a), 116 Stat. 2820, 2832 (2002). Forfeiture may

not be appropriate for "structural constitutional challenges" or "constitutional challenges to statutes or other agency-wide policies" that "fall outside the adjudicators' areas of technical expertise" or where adjudicators "are powerless to grant the relief requested." *Carr v. Saul*, 593 U.S. 83, 92–93 (2021). Here, Ms. Lucas does not assert such a structural or general challenge. Instead, the relief she seeks is available before the Board, and her argument is well within the Board's expertise. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 12, 23 (2012) (noting the Board "routinely adjudicates . . . claims that an agency took adverse employment action in violation of an employee's First . . . Amendment rights" and that its expertise may be brought to bear in addressing such claims). Ms. Lucas's argument does not fall into one of the recognized exceptions for constitutional arguments.

Ms. Lucas further argues that she "was not advised by the Administrative Judge that asserting the order to apologize violated [her] First Amendment rights constituted an affirmative defense" and that she therefore "never waived this argument." Pet'r's Br. 3. Her argument is unpersuasive. The Board and administrative judge were under no obligation to inform her that her First Amendment argument was an affirmative defense. Ms. Lucas relies on *Hulett v. Department of the Navy*, 120 M.S.P.R. 54 (2013), for her assertion. Pet'r's Br. 2; Pet'r's Reply Br. 1. However, *Hulett* does not establish that the administrative judge must inform an appellant of all possible affirmative defenses. Rather, *Hulett* establishes the Board's obligations when an appellant properly raises an affirmative defense and demonstrates no intent to waive such defenses. *Hulett,* 120 M.S.P.R. at 58. Here, Ms. Lucas—represented by counsel—failed to raise a First Amendment defense in the first instance. Moreover, even if Ms. Lucas did not personally waive her First Amendment argument or understand its nature as an affirmative defense, her attorney waived this defense on her behalf, and Ms. Lucas is bound

by this action. *See Rowe v. Merit Sys. Prot. Bd.*, 802 F.2d 434, 437 (Fed. Cir. 1986) ("It is well settled that a person is bound by the consequences of his representative's conduct, which includes both his acts and omissions.").

In sum, we hold that Ms. Lucas failed to properly raise her First Amendment argument before the Board, and we decline to address it on the merits here.

B.

We now address the penalty of removal. Ms. Lucas argues that—based on certain mitigating factors, the reasons for her refusal to apologize, her 17 years of service, and work record—"the penalty of removal should have been mitigated under the *Douglas* [f]actors." Pet'r's Br. 2. She also asserts that "[t]he punishment exceeds the bounds of reasonableness." *Id.* We disagree.

When reviewing a penalty, "[t]he Board is required to determine whether the agency has responsibly balanced the factors delineated in [*Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981)]." *Holmes v. U.S. Postal Serv.*, 987 F.3d 1042, 1047 (Fed. Cir. 2021) (internal quotation marks and citation omitted). However, "[t]he determination of which *Douglas* factors apply in a particular case and the weight to be given the relevant factors lies primarily within the agency's broad discretion to determine the appropriate penalty for a particular case." *Zingg v. Dep't of Treasury, IRS*, 388 F.3d 839, 844 (Fed. Cir. 2004).

The agency considered several factors to determine the appropriate penalty, including the "nature and seriousness of [the] offense," Ms. Lucas's notice of the proper conduct for postal employees, her "potential for rehabilitation" in view of her failure to accept responsibility, her position as a manager, her years of service with a record of no discipline for performance, and her justification that apologizing "would be tantamount to lying," which would "violate[] [her] religious beliefs." App'x 3–4. Although her length of

service and record without discipline were mitigating factors, the agency found that "a reduction of the penalty of removal [was] unwarranted." App'x 4. The agency further found that "[her] removal will promote the efficiency of the service." *Id.*

The Board found that the agency "appropriately considered the relevant factors enumerated in *Douglas*" and "exercised [its] discretion within the tolerable limits of reasonableness in reaching the decision to remove [Ms. Lucas] from her employment with the Postal Service." App'x 36. In reviewing the penalty, the Board primarily considered testimony of Mr. Lawrence Dauby, the deciding official. App'x 33–34. He explained that Ms. Lucas's misconduct was "very serious, particularly given her seniority" and role, and "risk[ed] damaging the agency's [crucial] relationships with union partners." App'x 34. He further testified that Ms. Lucas willfully refused to apologize over a thirty-day period, indicating "she had no potential for rehabilitation," and she "had taken absolutely no responsibility for her actions." *Id.* He also "testified that he considered her 17 years of service and clean disciplinary record" but that they "were not sufficient to reduce the penalty because her misconduct went to the exact core of management's relationship with the unions and had the potential to create chaos within the organization." *Id.* (internal quotation marks and citation omitted). The Board also addressed Ms. Lucas's argument that her penalty was inconsistent with the penalty received by another employee for insubordination, crediting Mr. Dauby's testimony explaining why the situation was not comparable. App'x 35.

Ms. Lucas fails to establish any error or abuse of discretion in this analysis. First, she argues that she "issued the first written apology as instructed." Pet'r's Br. 2. But this apology is irrelevant to her removal: She was removed for failing to comply with later orders given after this initial statement was determined to be insufficient. App'x 1. She also asserts that a USPS policy statement issued after

her Board hearing provided that she "was to be provided full opportunity to respond to the allegations against [her] at the grievance level *which was never provided*." Pet'r's Br. 2 (emphasis added). However, Ms. Lucas does not explain why the policy statement has any bearing on the appropriateness of the removal penalty for a charge we otherwise sustain. *See Yeschick v. Dep't of Transp., F.A.A.*, 801 F.2d 383, 385 (Fed. Cir. 1986) (affirming the Board's decision where the petitioner failed "to state how [certain] factors could have served to mitigate the penalty of removal"). Moreover, the Board found "such an argument does not outweigh the seriousness of her repeated and intentional offenses." App'x 69. Here, the Board did not abuse its discretion in making this determination.

Lastly, Ms. Lucas asserts "the reasons for [her] refusal to issue the apology" should have mitigated the penalty of removal. Pet'r's Br. 2. We have never required the agency or the Board to consider the petitioner's alleged justification for insubordination as a mitigating factor. *See, e.g.*, *Nagel v. Dep't of Health & Hum. Servs.*, 707 F.2d 1384, 1385–87 (Fed. Cir. 1983) (affirming decision to remove petitioner for insubordination where the Board found "petitioner's belief" that an agency order was improper "did not lessen the gravity of the offense"); *Ferrone v. Dep't of Lab.*, 797 F.2d 962, 966–67 (Fed. Cir. 1986). Rather, all that is required is that the Board "articulate[] and consider[] [the *Douglas*] factors [it finds] to be relevant to [a] petitioner's case," as it did here. *Nagel*, 707 F.2d at 1386. The Board found her justification to be irrelevant, noting that Ms. Lucas "did not raise an affirmative defense of discrimination based on religion."[5] App'x 69. We see no error in the

---

[5]    The deciding official considered this justification and declined to credit it because he found it to be inconsistent based on her willingness to give a talk that she

Board's determination that her justification—regardless of which *Douglas* factor it might be considered under—was not relevant. *See Nagel*, 707 F.2d at 1386–87 ("We hold that no reversible error was committed by the board in this case when it discussed only those factors listed in the *Douglas* case it deemed relevant."). Moreover, in light of her justification and failure to accept responsibility, there is no indication that if Ms. Lucas were given a lesser penalty, she would eventually comply with the directive to issue an apology. *See* App'x 34; *Ferrone*, 797 F.2d at 966–67 ("[T]o reinstate [petitioner], at once or after a suspension, still defiant and still refusing to do what the agency ordered, would be tantamount to a total victory for the forces of insubordination.").

This "court will not disturb a penalty unless it exceeds the range of permissible punishment or is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 889 (Fed. Cir. 1985) (internal quotation marks and citation omitted). Considering "the severity of [Ms. Lucas's] offense" and "its impact on the agency's mission," we conclude the penalty is within the limits of reason. App'x 35.

### III. CONCLUSION

We have considered Ms. Lucas's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's final decision.

### AFFIRMED

### COSTS

No costs.

---

"stated was an apology to comply with the initial pre-arbitration settlement." App'x 3.