NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3238

DONALD L. CRANE,

Petitioner,

v.

DEPARTMENT OF THE AIR FORCE,

Respondent.

Kristina S. Holman, of Las Vegas, Nevada, argued for petitioner.

Captain Amina Q. Diehl, Attorney, General Litigation Division, Air Force Legal Operations Agency, of Arlington, Virginia, argued for respondent. Of counsel was Major Carey A. Merrill. Also of counsel were William F. Ryan, Assistant Director, and Kent G. Huntington, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3238

DONALD L. CRANE,

Plaintiff-Appellant,

v.

DEPARTMENT OF THE AIR FORCE,

Defendant-Appellee.

_____

DECIDED: July 6, 2007

_____

Before NEWMAN, Circuit Judge, LOURIE, Circuit Judge, and PROST, Circuit Judge.

Opinion for the court filed by Circuit Judge, NEWMAN. Dissenting opinion filed by Circuit Judge PROST.

NEWMAN, Circuit Judge.

Mr. Donald Crane appeals the decision of the Merit Systems Protection Board, Docket No. SF0752050105-I-1, affirming his removal from employment as a mason at Nellis Air Force Base, Utah. For the reasons set forth, we reverse the removal action and remand to the Board for determination of any appropriate disciplinary action.

BACKGROUND

Mr. Crane began employment with the 99th Civil Engineering Squadron at Nellis Air Force Base in 1990, in the position of Masonry Worker, WG-9. He had previously been employed as a mason at another Air Force base until its closure, and had served in the Marine Corps. During his employment at Nellis Air Force Base, Mr. Crane performed private masonry activities as a side business. This side business was conducted with the knowledge of his Air Force supervisors.

The events leading to Mr. Crane's removal began in 2003 when a representative of the Las Vegas Motor Speedway, Mr. David Stetzer, met with Air Force officials to discuss a welcome-home celebration for returning troops. Mr. Stetzer observed the concrete barriers on the base, and inquired of Master Sergeant Richard Huibregtse as to whether he could obtain similar barriers for use at the Speedway. MSgt Huibregtse, Mr. Crane's direct supervisor, asked Mr. Crane to contact Mr. Stetzer. MSgt Huibregtse testified that he understood that Mr. Crane would make this contact in his personal capacity in connection with his side business.

Mr. Crane contacted Mr. Stetzer, and on June 23, 2003 sent him a written proposal with photographs of a prototype of a proposed concrete barrier with "LVMS" stamped on the barrier. The Air Force stated, and repeats on this appeal, that the construction of this prototype, which used a less expensive pouring process, was approved by MSgt Huibregtse. MSgt Huibregtse testified that he informed his "wing leadership" of this development, and that they responded that they probably would not change the existing concrete barriers but that "they could pour one and 'see what they say.'" Air Force Br. at 7.

The prototype was built by Mr. Crane on Air Force premises using surplus government material. No orders were placed with Mr. Crane as a result of the Speedway proposal.

In September 2003 the Air Force initiated investigation of Mr. Crane based on reports of "unauthorized work." Apparently nothing further ensued until Lt. Col. Anthony Foti became the Commander of the 99th Civil Engineering Squadron in June 2004. On July 12, 2004 Col. Foti issued a Notice of Proposed Removal of Mr. Crane. Mr. Crane responded in writing on July 19 and 20, 2004. The Air Force states that Mr. Crane was not given the Report of the investigation until he was given a redacted copy on July 23, 2004. Gov't Br. at 13. Removal occurred in September 2004, on the charge of misuse of government property. Mr. Crane appealed to the MSPB.

At the hearing the testimony of the issue of unauthorized work related solely to the prototype barrier and its marking "LVMS." MSgt Huibregtse testified that he knew that Mr. Crane "has a business on the outside" and that he told Mr. Crane about the Speedway inquiry concerning concrete barriers, knew of and approved the construction by Mr. Crane of the prototype barrier, and told Air Force officials about the new process developed by Mr. Crane. Mr. Crane had designed the barriers then in use, which were known as "DC barriers."

There was also testimony concerning Mr. Crane's several awards and commendations, and that Mr. Crane consistently received highly favorable performance ratings. For example, a Civilian Rating of Record includes the following in connection with a monetary performance award:

> Led 7-man crew in the design and construction of 500 concrete, rebar, and cinder block traffic barriers.

Increased base force protection measures; being sought as benchmark by DoD . . . barriers are in demand at bases nationwide.

Assisted VOTECH block team in the layout/construction of 600 feet of block wall at cryogenics compound; secured assets.

Hand-picked to assist Horizontal section in forming/pouring 150 feet of sidewalk at Red Flag facility; improved accessibility.

Mr. Crane is the masonry systems "go-to-guy" for advice; always sought by shop leadership . . . skill knowledge has aided immensely.

Displayed stellar skills while led 7 federal inmates in construction of 800 ft. block wall -- Child Development Center.

Led construction of 480 feet of block wall/personnel gate at 415 AGE compound; secured assets and improved base appearance.

Don displayed his talents assisting VOTECH; laid first course of block at F-22 project . . . stayed one step ahead of block crew.

Dedication to duty and teamwork are a few of his finest attributes; excelled at all assigned taskings . . . major asset to section.

Rating Record with three (illegible) signatures in April and May 2004.

The Administrative Judge found that Mr. Crane "used government concrete to build a barrier that was marked with the initials 'LVMS' to solicit personal, private business from the Speedway," and sustained the removal, stating that "though the penalty of removal may seem harsh at first glance, the agency-imposed penalty is within the bounds of reasonableness." The full Board affirmed without review, and this appeal followed.

DISCUSSION

Mr. Crane states that the Air Force had always known of his private masonry business, and had allowed and even encouraged this private business. Government counsel conceded, at the argument of this appeal, that the record shows that there was no objection by the Air Force to Mr. Crane's outside masonry business, and that the Air Force had not warned Mr. Crane concerning disapproval of these activities including the Speedway proposal:

Court: "Was there a warning?"

Gov't counsel: "No, there is no warning, no, Ma'am."

\* \* \* \*

Court: But you do know that he was never disciplined or removed or told to cut it out?

Gov't counsel: There is no evidence in the record as to that, Ma'am. So I don't know, but there is no evidence in the record, so yes. . . . He was fired, in this case, he was fired for, specifically, placing the initials, pouring government concrete.

Mr. Crane stresses that the Air Force was aware of his side business and did not warn him that any aspect of what he was doing was deemed improper activity that could lead to termination of his employment. It was conceded at oral argument that there is no evidence of any objection to or criticism of this activity. The government stated that it does not know "based on the facts in this record, whether [Mr. Crane's side business] was a business that he conducted on Nellis Air Force Base itself or whether it was in his garage."

The government acknowledged that Mr. Crane's supervisor authorized the prototype barrier that led to Mr. Crane's removal. The record shows that the preparation of the barrier using a new process was known to Mr. Crane's supervisor and the "wing leadership." It was undisputed that the submission to the Speedway was enabled by supervisor MSgt Huibregtse, who also testified that he was not aware of the "LVMS" stamp on the barrier. The government stresses that Mr. Crane destroyed the prototype after he learned of the investigation. Colonel Foti testified that the removal was based on the construction of the prototype and that the placement of the LVMS stamp "led me to believe that there was an ulterior motive to use government property for some other financial gain." Transcript, App. at 115.

2006-3238                                   5

The government argues that Mr. Crane's removal is supported because the placement of "LVMS" on the prototype barrier shows his intention to use the prototype to solicit business from Speedway. Whether or not this activity was appropriate, it came to Mr. Crane through persons at the Air Force. The lengthy period of condonation of the outside business, and the conceded lack of warning that it was disapproved, leave the penalty of "firing" without support by substantial evidence. Precedent generally requires notice to an employee when previously condoned activity is no longer condoned, giving the employee the opportunity to conform to any new rules. For example, in VanFossen v. Dep't of Housing & Urban Dev., 748 F.2d 1579 (Fed. Cir. 1984) the agency removed Mr. VanFossen for engaging in outside employment without authorization; this court vacated the removal because Mr. VanFossen had received authorization from his area manager and had not been warned about the possible invalidity of the authorization or told to discontinue the conduct; this court stated: "In determining an appropriate penalty . . . failure to consider a significant mitigating circumstance constitutes an abuse of discretion." Id. at 1581. There is MSPB precedent as to military employees, see, e.g., Davis v. Dep't of the Army, 33 M.S.P.R. 223, 230 (1987) (on charges including unauthorized possession and misuse of government property, the Board found that "the use of government property for which he was charged was initially authorized by his supervisor" and therefore that the maximum reasonable penalty was a demotion and a sixty-day suspension); Tallis v. Dep't of Navy, 20 M.S.P.R. 108, 111 (1984) (factors such as the express permission from the employee's supervisor for the charged misuse of government computer facilities and the

employee's twenty-five years of satisfactory service mitigate the penalty to a two-day suspension).

In determining a penalty, all relevant factors must be weighed in the context of the infraction, as explained in <u>Douglas v. Veterans Admin.</u>, 5 M.S.P.R. 280, 303 (1981) ("Before it can properly be concluded that a particular penalty will promote the efficiency of the service, it must appear that the penalty takes reasonable account of the factors relevant to promotion of service efficiency in the individual case."). Of particular relevance to the reasonableness of the agency penalty here imposed is "[t]he clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question." <u>Douglas</u>, 5 M.S.P.R. at 305.

Mr. Crane directs attention to other <u>Douglas</u> factors that also weigh in his favor, including his commendations and awards and lengthy government service, and that the AJ found that "Mr. Crane had no documented disciplinary actions." On the record before us, where Mr. Crane's supervisors knew of and authorized the charged conduct (except for the placement of the initials), and Mr. Crane was not instructed or warned that he had violated various rules, the penalty of separation from service was not reasonably within the <u>Douglas</u> parameters. <u>Douglas</u> states that "the Board's review of an agency-imposed penalty is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness." In determining Mr. Crane's penalty, the agency as well as the Board failed to consider the relevant factor of Mr. Crane's supervisor's involvement in informing Mr. Crane of the LVMS business opportunity and approving the prototype. Thus, the agency did not give meaningful

consideration to a key relevant factor.  The removal is reversed; we remand to the Board for reinstatement of Mr. Crane to his position, and determination of any appropriate disciplinary action upon consideration of all of the Douglas factors.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3238

DONALD L. CRANE,

Petitioner,

v.

DEPARTMENT OF THE AIR FORCE,

Respondent.

PROST, <u>Circuit Judge</u>, dissenting.

According to the majority, "[t]he lengthy period of condonation of [Mr. Crane's] outside business, and the conceded lack of warning that it was disapproved, leave the penalty of 'firing' without support by substantial evidence." Maj. Op. at 6. Mr. Crane, however, was not terminated for operating an outside business; Mr. Crane was terminated for misusing government resources. As such, the fact that the Air Force condoned Mr. Crane's outside business is irrelevant to this appeal. What is relevant is that the record is devoid of any evidence the Air Force ever condoned Mr. Crane's use of government resources in his outside business. Accordingly, I respectfully dissent.

What the record does show is that Mr. Crane constructed a prototype concrete barrier using government equipment and materials and that he used the prototype in a proposal to the Las Vegas Motor Speedway. To the extent Mr. Crane's supervisor approved the construction of the prototype, it was to see if the "wing leadership" would

"buy off" on the new design. However, Mr. Crane failed to submit the appropriate documentation to the Air Force. Instead, he went ahead and constructed his prototype using government equipment and materials, stamped it with the letters "LVMS," used it in a proposal to the Las Vegas Motor Speedway (which just so happens to have the initials "LVMS"), never submitted the completed prototype to the anyone in his chain-of-command, and then had it destroyed once he learned the Air Force was investigating him for misusing government property. Under these circumstances, a warning that this type of activity was inappropriate is not necessary. Mr. Crane should have known better. Moreover, his unauthorized destruction of the barrier, initial refusal to explain the meaning of the initials "LVMS" to his superior, and dubious subsequent explanation of their meaning demonstrate that Mr. Crane did know better. This court reviews an agency's decision as to the appropriateness of a penalty with great deference, deferring to the agency unless the penalty amounts to an abuse of discretion. Brook v. Corrado, 999 F.2d 523, 528 (Fed. Cir. 1993). The circumstances of this case clearly do not warrant withholding that deference. Simply put, the conclusion that Mr. Crane misused government equipment, materials, and premises was supported by substantial evidence, and his termination was not an abuse of discretion. Accordingly, the decision of the Merit Systems Protection Board should be affirmed in its entirety.