# United States Court of Appeals for the Federal Circuit

2009-3120

TERESA C. CHAMBERS,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

Paula Dinerstein, Public Employees for Environmental Responsibility, of Washington, DC, argued for petitioner.

Hillary A. Stern, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Barbara Sheehy, Assistant Counsel, National Treasury Employees Union, of Washington, DC, argued for amicus curiae National Treasury Employees Union. With her on the brief were Gregory O'Duden, General Counsel, and Barbara A. Atkin, Deputy General Counsel.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2009-3120

TERESA C. CHAMBERS,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

Petition for review of the Merit Systems Protection Board in consolidated case nos. DC1221040616-M-1 and DC0752040642-M-1.

_____

DECIDED:  April 21, 2010

_____

Before DYK, SCHALL, and PROST, Circuit Judges.

DYK, Circuit Judge.

Teresa Chambers ("Chambers") petitions for review of an adverse decision of the Merit Systems Protection Board ("Board").  See Chambers v. Dep't of the Interior, 110 M.S.P.R. 321 (2009) ("Chambers III").  The Board sustained Chambers' removal from her position as the Chief of United States Park Police ("Park Police").  We affirm the Board's decision sustaining charges 3, 5 and 6.  However, we reverse the Board's decision to sustain charge 2.  In light of the reversal of charge 2, we remand to the Board for reconsideration of whether removal remains a reasonable penalty and whether the agency has presented clear and convincing evidence that it would have

taken the same personnel actions against Chambers based on the sustained charges, in the absence of her protected disclosures.

BACKGROUND

The relevant background has already been set forth in detail in our prior opinion in Chambers v. Department of Interior, 515 F.3d 1362 (Fed. Cir. 2008) ("Chambers II"). We therefore present only a brief summary here. Chambers served as Chief of the United States Park Police, a component of the National Park Service ("NPS"), which is within the Department of the Interior ("the agency"). On November 20, 2003, Chambers spoke with a reporter from the Washington Post. On December 2, 2003, she communicated with a United States House of Representatives ("House") Interior Appropriations Subcommittee staffer. Both of these communications concerned the Office of Management and Budget's ("OMB") recent decision not to seek an increase in the U.S. Park Police budget and the Park Police's need for additional resources. In her conversations with the reporter and the staffer, Chambers expressed her belief that due to underfunding, the U.S. Park Police lacked adequate staff and that inadequate staffing posed various risks to the public in those areas patrolled by the U.S. Park Police.

The House staffer subsequently informed Chambers' supervisor, Donald Murphy ("Murphy"), of Chambers' communications with her. The Washington Post published an article on December 2, 2003, which attributed several statements to Chambers. On the evening of December 2, 2003, Murphy imposed restrictions on Chambers' authority to communicate with the news media. On December 5, 2003, Chambers was placed on administrative leave, and on December 17, 2003, Murphy proposed to remove

Chambers, citing six charges of misconduct, several of which were grounded in Chambers' communications with the <u>Washington Post</u> reporter and the House staffer.[1] Chambers challenged these actions, claiming retaliation for disclosures protected under the Whistleblower Protection Act ("WPA"). <u>See</u> 5 U.S.C. § 2302(b)(8).

On July 9, 2004, the deciding official, the Deputy Assistant Secretary for Fish and Wildlife and Parks, Paul Hoffman ("Hoffman"), issued an agency decision sustaining all six charges and terminating Chambers. Charge 1 derived from Chambers' conversation with the House staffer, and charges 2, 3, and 4 derived from the conversation with the <u>Washington Post</u> reporter. Charges 5 and 6 derived from unrelated incidents that took place between March and early September of 2003. The agency took no disciplinary action against Chambers with respect to those earlier incidents until after Chambers' communications with the reporter and with the House staffer. Chambers appealed to the Board.

---

[1] The six charges were as follows:

1. Making improper budget communications with an Interior Appropriations Subcommittee staff member.
2. Making public remarks regarding security on the National Mall, in parks, and on parkways in the Washington, D.C. metropolitan area.
3. Improperly disclosing budget deliberations to a <u>Washington Post</u> reporter.
4. Improper lobbying.
5. Three specifications of failing to carry out a supervisor's instructions.
6. Failing to follow the chain of command.

<u>Chambers III</u>, 110 M.S.P.R. at 322.

In an Initial Decision, the Administrative Judge ("AJ") sustained charges 2, 3, 5, and 6. She did not sustain charges 1 and 4 because she found that the agency had failed to prove these charges. The AJ then found that Chambers had not made any protected disclosures; that despite only four of the charges being sustained, the agency would have imposed the penalty of removal anyway; and that, even if the statements were protected by the WPA, the agency had proved that it would have taken the same action in the absence of the alleged whistleblowing activity. However, the AJ also determined that the disclosures were a contributing factor in the discipline. The Board affirmed the AJ's decision, and Chambers appealed to this court. See Chambers v. Dep't of the Interior, 103 M.S.P.R. 375 (2006) ("Chambers I").

On appeal, we rejected Chambers' appeal with respect to the charges and the penalty of removal based on grounds other than the WPA. Chambers II, 515 F.3d at 1370-71. However, with respect to Chambers' disclosures alleged to be protected under the WPA, we held that the Board had applied an improper standard. Id. at 1368. The Board had reasoned that under our decision in White v. Department of the Air Force, 391 F.3d 1377 (Fed. Cir. 2004), "[a] policy disagreement can serve as the basis for a protected disclosure only if the legitimacy of a particular policy choice 'is not debatable among reasonable people.'" Chambers I, 103 M.S.P.R. at 387 (quoting White, 391 F.3d at 1382). It then determined that this case "presents a classic policy disagreement over which reasonable minds might differ." Id. The Board therefore concluded that none of the disclosures were protected under the WPA because they did not evidence "a substantial and specific danger to public health or safety." Id. at 388,

390. To prevail on a claim under the WPA, an employee must show that she disclosed information she reasonably believed evidences "(i) a violation of any law, rule or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). We held that the Board incorrectly applied the standard pertaining to claims of gross mismanagement in evaluating disclosures as to a "substantial and specific danger to public health or safety." Chambers II, 515 F.3d at 1368. We therefore vacated the Board's decision with respect to the WPA issue and remanded the case to the Board for reconsideration under the correct WPA standard.

On remand, the two-member Board "affirm[ed] . . . as modified" the initial decision sustaining Chambers' removal and denying her request for corrective action. Chambers III, 110 M.S.P.R. at 321. The Board first denied Chambers' motion to reopen its previous decision and to reconsider the merits of the sustained charges apart from the WPA issue. The Board also rejected her WPA claims. Although the two Board members agreed on the disposition of the case, they did not agree on the reasoning. Chairman McPhie, in a separate concurring opinion, indicated that he would find certain of Chambers' statements both to the Washington Post reporter and to the House staffer to be protected as evidencing a substantial and specific danger to public health or safety. In particular, he found that the first two statements Chambers made to the Washington Post that were cited by the agency in charge 2 were protected under the WPA. He also found additional statements made to the Washington Post reporter, not cited specifically by the agency in charge 2, to be protected. Nonetheless, he indicated

that he would find that the agency's penalty remained reasonable and that the agency presented clear and convincing evidence that it would have taken the same actions against Chambers in the absence of the disclosures he found protected, based on charges 3, 5, 6, and the sustained part of charge 2.[2]  Vice Chairman Rose, in a separate concurring opinion, noted that she would find none of Chambers' statements to be protected.  She therefore did not reach the issues of whether the agency would have taken the same actions in the absence of the allegedly protected statements.

Chambers timely appealed to this court.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of final Board decisions is limited.  We may only set aside agency actions, findings, or conclusions we find to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).  We review legal questions de novo. Welshans v. U.S. Postal Serv., 550 F.3d 1100, 1102 (Fed. Cir. 2008).

I

Under 5 U.S.C. § 2303(b)(8), an agency is prohibited from taking a personnel action against an employee for disclosing information the employee reasonably believes

---

[2]  Chairman McPhie also would find that Chambers' placement on administrative leave, the order restricting her media access, and her removal all constitute personnel actions under the WPA.

evidences gross mismanagement, a gross waste of funds, an abuse of authority, a substantial and specific danger to public health or safety, or a violation of law, rule or regulation.  See Lachance v. White, 174 F.3d 1378, 1380-81 (Fed. Cir. 1999).  Pursuant to 5 U.S.C. § 2302(b), to establish reprisal for whistleblowing, the employee must establish four elements: (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action.  See Lachance, 174 F.3d at 1380.  If the employee makes this showing, there is still no violation of the WPA if the agency can prove by clear and convincing evidence that it would have taken the same personnel action(s) in the absence of the protected disclosure.  5 U.S.C. § 1221(e)(2).

As we explained in our opinion in Chambers II, the inquiry into whether a disclosed danger is sufficiently "substantial and specific" to warrant protection under the WPA is guided by several factors, among these: (1) "the likelihood of harm resulting from the danger;" (2) "when the alleged harm may occur;" and (3) "the nature of the harm," i.e., "the potential consequences."  Chambers II, 515 F.3d at 1369.[3]  Disclosures

---

[3]     We stated:

The Board has . . . [stated] that "revelation of a negligible, remote, or ill-defined peril that does not involve any particular person, place, or thing, is not protected."  Our court has held that the disclosure of a danger only potentially arising in the future is not a protected disclosure.  Rather, the danger must be substantial and specific . . . . If the disclosed danger could only result in harm under speculative or improbable conditions, the

of dangers to public health or safety must be considered separately from claims of gross mismanagement, and the fact that a particular health or safety statement involves a policy decision or disagreement does not deprive it of protection under the WPA. Id. at 1368-69. Consistent with these factors, the outcomes of past cases addressing whether particular disclosures were protected as revealing a substantial and specific danger to public health and safety have depended upon whether a substantial, specific harm was identified, and whether the allegations or evidence supported a finding that the harm had already been realized or was likely to result in the reasonably foreseeable future. Cases in which the employee's burden was found to be satisfied have concerned specific allegations or evidence either of actual past harm or of detailed circumstances giving rise to a likelihood of impending harm.[4]

---

> disclosure should not enjoy protection. Another important factor is when the alleged harm may occur. A harm likely to occur in the immediate or near future should identify a protected disclosure much more than a harm likely to manifest only in the distant future. Both of these factors affect the specificity of the alleged danger, while the nature of the harm-the potential consequences-affects the substantiality of the danger.

Chambers II, 515 F.3d at 1369 (citations omitted).

[4] See Johnston v. Merit Sys. Prot. Bd., 518 F.3d 905, 907 (Fed. Cir. 2008) (holding that where an employee of an agency responsible for safely transporting nuclear weapons and other nuclear materials objected to a proposed change in policy that would have transferred responsibility for safety management "to personnel who lacked appropriate education and experience in safety management," her complaint established Board jurisdiction because she provided detailed allegations concerning the rigors and risks associated with training); Woodworth v. Dep't of the Navy, 105 M.S.P.R. 456, 463 (2007), aff'd, 329 F. App'x 281 (Fed. Cir. 2009), cert. denied, 2010 WL 265885 (Mar. 1, 2010) (the Board held sufficient to confer jurisdiction an employee's complaint that workers who disassembled missiles were exposed to missile blast residue that contained "chemical elements and metal compounds which are harmful caustic, toxic,

To prevail on the merits of a WPA claim, an employee must prove by a preponderance of the evidence that she made a protected disclosure. See Johnston v. Merit Sys. Prot. Bd., 518 F.3d 905, 909 (Fed. Cir. 2008). Chambers argues that certain statements she made to the Washington Post as well as statements she made to the House staffer were protected under section 2303(b)(8) because they constituted disclosures of information she reasonably believed evidenced a substantial and specific danger to public safety.

Charges 5 and 6, which concern instances in which Chambers was found to have failed to follow a supervisor's instructions and failed to properly follow the chain of command, are not alleged by Chambers to involve any WPA-protected disclosures. Because we affirmed the Board's decision on the merits with respect to all charges apart from the WPA issues, charges 5 and 6 are governed by our opinion in Chambers II, which sustained the charges. See 515 F.3d at 1369-70.

---

irritants and carcinogens," and that he had already experienced resultant "skin, eye, and nose irritation and that he suffered from many sinus infections which he believed were caused by exposure to the missile blast residue"); Wojcicki v. Dep't of the Air Force, 72 M.S.P.R. 628, 634 (1996) (the Board found that an employee made protected disclosures by revealing evidence that the agency's sandblasting practices had caused him to cough up blood, and that it was exposing other workers to similar health hazards); Braga v. Dep't of the Army, 54 M.S.P.R. 392, 398 (1992), aff'd, 6 F.3d 787 (Fed. Cir. 1993) (the Board held protected the complaint of a designer of body armor for soldiers where "the real-world threat levels from anti-personnel mines greatly exceeded the threat level he had been asked to design the [body armor] to meet, and that soldiers relying on the [body armor] for protection would therefore be in grave danger of being killed or maimed.").

We therefore need only consider charges 2 and 3. At the outset, we note that charges 2 and 3 were not based on Chambers' statements to the House staffer but were based entirely on Chambers' statements to the Washington Post.

Chambers argues on appeal that charge 3 is in part grounded in disclosures protected under the WPA as disclosing a substantial and specific danger to public safety. Charge 3 accuses Chambers of "[i]mproper disclosure of budget deliberations." J.A. 120. The Washington Post article in question attributed the following statement to Chambers: "She said she has to cover a $12 million shortfall for this year and has asked for $8 million more for next year." Id. at 121. The agency charged Chambers with improperly disclosing that she had "asked for $8 million more for next year." Id. The agency stated that at the time, the 2005 budget had not yet been transmitted to Congress, and by informing the reporter of this request, Chambers disclosed 2005 federal budget deliberations to the media before transmittal of the budget to Congress, in violation of agency protocol.[5]

On remand from this court, both members of the Board apparently did not consider this statement as being related to public safety and therefore did not address it. Chambers argues on appeal that Chambers' statement about the budget, which is the foundation for charge 3, is indeed protected because "[w]hile the statement regarding Park Police funding needs does not disclose a substantial and specific danger

_____

[5] Chambers previously disputed the accuracy of the statement which is the subject of charge 3. However, the AJ rejected her claim in that regard and all of the AJ's factual findings have been affirmed by the Board and by this court. See Chambers II, 515 F.3d at 1370.

to public safety in isolation, it is part of Chambers' overall disclosure that lack of funds was causing staffing shortages which in turn were causing dangers to public safety." Appellant's Br. 30. We agree with the Board that Chambers' disclosure of these specific budget numbers is not an aspect of her disclosures directed to public safety. Indeed, Chambers admits that this statement does not "disclose a substantial and specific danger to public safety in isolation." Though it is true that the budget provided for law enforcement necessarily limits the extent of protection of public health and safety, Chambers alleged no substantial or specific danger to public health and safety in connection with her disclosure of budget numbers. Accordingly, the Board was correct in considering this statement to be unprotected. We therefore hold that the Board properly sustained charge 3.

However, we reach a different result as to charge 2: "Making public remarks regarding security on the Federal mall, and in parks and on the Parkways in the Washington, D.C., Metropolitan area." J.A. 120. Charge 2 is supported by a single specification. For convenience, we have numbered the individual statements. The specification details that Chambers made certain statements to the Washington Post reporter and specifies that the resulting newspaper article

among other things, state[d] the following:

[1] Chambers said traffic accidents have increased on the Baltimore-Washington Parkway, which now often has two officers on patrol instead of the recommended four.
. . .
[2] 'It's fair to say where it's green, it belongs to us in Washington D.C.,' Chambers said of her department. 'Well, there's not enough of us to go around to protect those green spaces anymore.'

. . .

[3] The Park Police's new force of 20 unarmed security guards will begin serving around the monuments in the next few weeks, Chambers said. She said she eventually hopes to have a combination of two guards and two officers at the monuments.

J.A. 120.[6] The agency charged that these statements were improper because these "public remarks about whether and how many armed and unarmed U.S. Park Police officers are patrolling the Washington, D.C., metropolitan area[,] Federal malls, parks, and Parkways constitute [improper] public remarks about the scope of security present and contemplated for these areas under your jurisdiction." Id. Chambers argues on appeal that all of her public safety-related disclosures to the Washington Post reporter were protected under the WPA. Chairman McPhie analyzed all of the statements attributed to Chambers by the Washington Post reporter in his article. With respect to the statements detailed in charge 2, he found the first two listed statements and other statements not listed to be protected and found the third listed statement to be unprotected. Vice Chairman Rose found all of Chambers' statements to be unprotected.

We do not find it necessary for present purposes to examine all of Chambers' statements to the Washington Post reporter as we agree with Chairman McPhie that Chambers' first statement that traffic accidents have increased on the Baltimore-

---

[6] Chambers asserted previously that she did not identify the number of guards who would begin serving around the monuments and that the reporter incorrectly attributed this statement to her. The AJ found that Chambers did in fact make this statement and the AJ's factual findings have been upheld by the Board and by this court.

Washington ("BW") Parkway, which often had two officers on patrol instead of the recommended four, was protected under the WPA as evidencing a substantial and specific danger to public health or safety. First, an increase in traffic accidents is a significant and serious danger to public safety. Second, this statement details the specific consequence that has already resulted from the diversion of officers from the BW Parkway: more traffic accidents. Third, this statement contains the specific details as to the cause of the increased danger, namely the reduction from four officers to two. Here, the alleged danger—increased traffic accidents—was not vague or speculative. It was more than likely to occur, indeed it was certain, as it had already occurred. Such specificity is sufficient to establish a disclosure meriting protection under the WPA. Further, Chambers' beliefs both that traffic accidents present a substantial danger and that the diversion of Park Police from the BW Parkway was the cause of the increase in traffic accidents were reasonable.[7] Chambers' supervisor, Murphy, acknowledged that a change in "police staffing to patrol the highways" could affect traffic safety. Chambers III, 110 M.S.P.R. at 330. Chambers had expertise in public safety, and she was familiar with the areas under her jurisdiction. Her expertise in these matters supports the reasonableness of her belief.

---

[7] The test for determining whether an employee had a reasonable belief that her disclosures evidenced misconduct under the WPA is whether "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government evidence" wrongdoing as defined by the WPA. Lachance, 174 F.3d at 1381.

Because the sole specification for charge 2 is grounded in a WPA-protected disclosure, the charge cannot stand. Vice Chairman Rose stated that she would sustain the whole of charge 2 as she found no WPA-protected disclosures. Chairman McPhie noted that he would sustain charge 2, reasoning that "the non-protected statements made by [Chambers] to the Washington Post were alone sufficient to sustain Charge 2." Chambers III, 110 M.S.P.R. at 337. However, the law is clear that such charge-splitting is impermissible.

We have explained that "[w]hen an agency proposes to discipline an employee, it must notify the employee of the conduct with which he is charged 'in sufficient detail to permit the employee to make an informed reply.'" Lachance v. Merit Sys. Prot. Bd., 147 F.3d 1367, 1371 (Fed. Cir. 1998) (quoting Pope v. U.S. Postal Serv., 114 F.3d 1144, 1148 (Fed. Cir. 1997), and Brook v. Corrado, 999 F.2d 523, 526 (Fed. Cir. 1993)). Agencies typically give this notice by designating a particular charge and accompanying the charge with a narrative description, the "specification," which sets forth the details of the charged misconduct. Id. If the agency designates a specific charge as the basis for the proposed discipline, it must of course prove all the elements of that charge. Id. Where the agency only sets forth one specification, we have long held that

> [i]t is not permissible for the [Board] to split a single charge of an agency into several independent charges and then sustain one of the newly-formulated charges, which represents only a portion of the original charge. If the agency fails to prove one of the elements of its charge, then the entire charge must fall.

Burroughs v. Dep't of the Army, 918 F.2d 170, 172 (Fed. Cir. 1990). Here charge 2 cannot stand.[8] Discipline may not be based on a disclosure protected by the WPA. See, e.g., Greenspan v. Veterans Admin., 464 F.3d 1297, 1305 (Fed. Cir. 2006). Because the sole specification set forth to support charge 2 is grounded in at least one WPA-protected disclosure, charge 2 cannot stand.

In order to prevail on a claim of reprisal for making disclosures protected under 5 U.S.C. § 2303(b)(8), an appellant must show by preponderant evidence that the disclosures were a contributing factor in the agency's personnel action. See 5 U.S.C. § 1221(e)(1). The AJ considered this issue and found that the Chambers' statements that had been reported in the Washington Post were a contributing factor in Chambers' placement on administrative leave and in her removal. The agency did not challenge this finding below, nor does it do so now. We therefore hold that the disclosure we find protected was a contributing factor in the agency's decision to take adverse action against Chambers.

II

The remaining issues are whether removal remains a reasonable penalty in light of the dismissal of charge 2 and whether the agency has proved by clear and

---

[8] The cases Chairman McPhie cites in support of his decision to sustain charge 2 do not hold that a charge may be parsed out and then sustained in part. For example, in Greenough v. Dep't of the Army, 73 M.S.P.R. 648, 656-57 (1997), the agency proved two specifications, but not the third, and the Board held that that was sufficient to sustain the charge. Greenough does not authorize the Board to sustain a charge where the agency only sets forth one specification in support of the charge, and the charged conduct is grounded in WPA-protected disclosures. See also Hicks v. Dep't of the Treasury, 62 M.S.P.R. 71, 74 (1994), aff'd, 48 F.3d 1235 (Fed. Cir. 1995).

convincing evidence that it would have taken the same personnel actions against Chambers in the absence of the protected disclosures. See 5 U.S.C. § 1221(e)(2) (providing that "[c]orrective action . . . may not be ordered if the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure"). We are unable to sustain the Board's decision as to either of these questions. Chairman McPhie's opinion relies on portions of charge 2 to sustain the reasonableness of the penalty. Chambers III, 110 M.S.P.R. at 337 (indicating that "removal remains a reasonable penalty for the four sustained charges"). Our decision setting aside charge 2 means that the conduct covered by charge 2 cannot be relied on to sustain the reasonableness of the penalty even if some of that conduct could have formed the basis for a proper charge. Chairman McPhie also relied on portions of charge 2 in determining that the agency had established by clear and convincing evidence that it would have taken the same action based on the sustained charges. Id. at 339 (finding that the agency provided clear and convincing evidence "that it would have taken the same disciplinary actions against [Chambers] for her conduct underlying charges 3, 5 and 6, and the sustained portion of charge 2, even in the absence of her protected conduct").

In the case of Vice Chairman Rose, she did not explicitly address the reasonableness of the penalty (presumably because she would have sustained charges 2, 3, 5, and 6). She did not decide whether the agency had established by clear and convincing evidence that it would have taken the same action absent the protected disclosures because she found that none of the disclosures was protected. Thus,

neither opinion provides a basis for sustaining the Board's action. Even if one of the opinions could be sustained, sustaining one of two board opinions, when each is necessary to the result, is not sufficient to sustain the action.[9] See Corus Group PLC v. Int'l Trade Comm'n, 352 F.3d 1351, 1363 (Fed. Cir. 2003) ("If any opinion necessary to the majority . . . fails to satisfy the statutory standard, the decision must be set aside.").

Under the circumstances we think that the most appropriate course is to remand to the Board for further consideration. As to the reasonableness of the penalty, the Board must consider on remand whether the agency's penalty of removal was reasonable in light of the three remaining sustained charges—charges 3, 5, and 6. See Douglas v. Veterans Admin., 5 M.S.P.R. 280, 305 (1981). Here, the deciding official's testimony is ambiguous as to whether he would or would not have taken the same action if charge 2 had not been sustained.[10] The resolution of such ambiguities is a

---

[9]  Of course, if we determine that a particular result is legally compelled, no remand to the Board would be necessary.

[10]  The deciding official's testimony is as follows:

JUDGE BOGLE: . . . Looking at the charges here, all of which you sustain, would you have imposed a lesser penalty if some of them had not been sustained, and if so, can you tell us which ones?
THE WITNESS: Yes. If fewer than all of the charges had been sustained, I would have still imposed the penalty of removal.
For me, the charge of improper disclosure of budget information [charge 3], the violation of the OMB circular [charge 3], the disclosure of the staffing and patrol numbers at the icons and the Federal parkways [charge 2], and the willful failure to carry out instructions by her immediate supervisor [charge 5], those all together aggregated to the point that I felt it [sic] was justified in removal.
JUDGE BOGLE: Are you saying that each of these charges standing alone would warrant the penalty of removal?

matter for the Board in the first instance. If the Board determines that the deciding official would have removed Chambers based only on charges 3, 5, and 6, the Board itself must determine whether the penalty was reasonable. However, if there is "some indication that the agency would have regarded the sustained charges as insufficient to justify the penalty imposed," the Board must remand the case to the agency for redetermination of the appropriate penalty in the first instance. Guise v. Dep't of Justice, 330 F.3d 1376, 1381 (Fed. Cir. 2003); see Modrowski v. Dep't of Veterans Affairs, 252 F.3d 1344, 1353 (Fed. Cir. 2001).

As to the second question, the Board must decide whether the agency has established by clear and convincing evidence that it would have removed Chambers based on the sustained charges 3, 5, and 6. In making this determination, the agency cannot rely on the conduct underlying charges 1, 2, and 4, which have been set aside. We have identified certain factors which should be considered when determining this issue, such as

---

THE WITNESS: No, I don't think I'm saying that. I think what I'm saying is those three in particular together [charges 2, 3, and 5] warrant removal.

JUDGE BOGLE: Tell me again which three you are talking about.

THE WITNESS: The disclosure of budget numbers. . . . The disclosure of security and staffing levels at the icons, and the failure to carry out instructions.

JUDGE BOGLE: Those were the three most important charges in your mind, and if those three were not sustained, what penalty would you have chosen?

THE WITNESS: I would probably have proposed a suspension and perhaps a reinstatement into a position of less responsibility.

J.A. 442-43.

[1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

Carr v. Social Sec. Admin., 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Before rendering a final decision on the two questions we have set out, the Board should receive briefing from the parties and should consider whether, for any reason, a remand to the AJ is appropriate.[11]

<u>AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED</u>

COSTS

No costs.

---

[11] On appeal, Chambers challenges three actions by the agency: placing her on administrative leave, restricting her media access, and removal. The parties place almost all of their emphasis on the removal issue, as do we. On remand, the Board should address the other two actions as well to see if corrective action is warranted.