NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VIRGINIA LOVETT,**
*Petitioner,*

**v.**

**INTERNAL REVENUE SERVICE,**
*Respondent.*

---

2012-3030

---

Petition for review of an arbitrator's decision by Roger C. Williams.

---

Decided: April 12, 2013

---

JOHN DEREK WALES, III, of John D. Wales, PC, of Atlanta, Georgia, for petitioner.

KATY M. BARTELMA, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. On the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, PATRICIA M. MCCARTHY, Assistant Director, and AMANDA L. TANTUM,

Trial Attorney.   Of counsel was CHRISTOPHER ANDREW
BOWEN, Trial Attorney.

———————————

Before NEWMAN, BRYSON, and MOORE, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Petitioner Virginia Lovett appeals an arbitration deci-
sion sustaining her removal as file and mail clerk of the
Image Control Team (ICT) in Account Management of the
IRS's Wage and Investment Operating Division in Cham-
blee, Georgia.   Because the arbitrator's decision is sup-
ported by substantial evidence, and is not arbitrary,
capricious, contrary to law, or an abuse of discretion, we
*affirm*.

## BACKGROUND

Petitioner worked at the IRS for approximately 23
years prior to her removal.   During the relevant period,
petitioner was supervised by two lead file clerks and two
managers.   Tammy Hatchell was an ICT manager from
May 2009 through June 2010.   Carla Belle was a lead
clerk from June 2009 to October 2009.   Sharon Watson
was a lead clerk from October 2009 through July 2010.
The department manager was Michele Williams.   The
operation manager was Judith Baker.

On February 8, 2010, Hatchell recommended to
Baker that corrective action be taken against petitioner
due to several instances of alleged workplace misconduct.
In accordance with IRS disciplinary procedures, Hatchell
filled out a Recommendation for Corrective Action Form
10954.   J.A. 293.   Baker reviewed the allegations, and
determined that disciplinary action was warranted.   On
March 4, 2010, Baker provided petitioner a Notice of
Proposed Adverse Disciplinary Action ("Notice").   J.A. 93.
The Notice set forth fourteen individual specifications of
misconduct, organized into three reasons for disciplinary

action: 1. failure to follow management directives; 2. causing workplace disruptions; and 3. sending inappropriate emails and letters to management. J.A. 93–96. The individual specifications included allegations of failing to follow management directives regarding computer use, failing to adhere to the Weekly Duty Schedule, improperly using a cell phone, arguing with managers, and sending inappropriate emails and letters to superiors. *Id.*

On March 21, 2010, Atlanta Field Director Jon Schwartz issued a Decision sustaining each of the fourteen specifications against petitioner. J.A. 97–98. Director Schwartz determined that no penalty less than removal would be adequate, and removed petitioner from her position effective May 24, 2010. Petitioner appealed Schwartz's determination to arbitration.

On October 28, 2010, an arbitration hearing was held in Chamblee, Georgia, in which petitioner's removal was litigated. The government's witnesses included Hatchell, Belle, Watson, Williams, and Schwartz. Petitioner proffered her own testimony, and that of her colleague John Sheffield, and union representative Tita Grier.

On October 11, 2011, arbitrator Roger C. Williams issued an opinion upholding petitioner's removal. *Internal Revenue Serv. v. Nat'l Treasury Emp. Union*, Opinion and Award of Arbitrator 29 (Oct. 11, 2011) (hereinafter "Op"). The opinion discussed each of the 14 specifications against petitioner. In conclusion, the opinion stated that the petitioner had demonstrated

> persistent unwillingness to accept constructive criticism and corrective instruction from her supervisors, and [had a] routine practice of criticizing managers, trainers, and leads, who tried to correct deficiencies in her performance.

*Id.* 27. The arbitrator also found that the agency's efforts to modify petitioner's behavior were unsuccessful and there was no reasonable likelihood that her behavior would change, justifying removal. *Id.* 28. The arbitrator found evidence of non-removal in similar cases unpersuasive, stating that those instances were not equally "egregious or persistent." *Id.* 29.

## DISCUSSION

This court reviews the decisions of arbitrators in Federal employment disputes "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. §7121(f). An arbitrator's decision must be affirmed unless it was not supported by substantial evidence, obtained without following procedures required by law, rule, or regulation, or was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §7703(c) (2000); *Martin v. Dep't of Veterans Affairs*, 412 F.3d 1258, 1264 (Fed. Cir. 2005).

Petitioner states that the arbitrator's determinations as to particular specifications are "unsupported" and "arbitrary and capricious." Pet'r Br. 12–17. Petitioner further avers that even if some specifications have "some basis in fact," termination of employment based on those violations resulted in "manifest injustice" because the charges "overlap and fail to rise to the level of serious misconduct." *Id.* 18–21.

The government states that this court need only uphold the arbitrator's conclusions as to one of the specifications to sustain petitioner's removal. Gov't Br. 16–18 (citing *Burroughs v. Dep't of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990)). The government states that the arbitrator's conclusions were supported by substantial evidence, and his application of the *Douglas* factors was not arbitrary or capricious. *Id.* 26.

For the following reasons, we conclude that the arbitrator's determinations are supported by substantial evidence and the removal of petitioner was not arbitrary or capricious.

## I.

### REASON 1: FAILURE TO FOLLOW DIRECTIVES

The arbitrator found that Reason 1, specifications 1 and 2 asserted against petitioner were proper. Both of those specifications arose out of a single computer rebooting incident which took place on January 21, 2010, about which the arbitrator received extensive evidence.

According to the testimony of petitioner's ICT Manager, Hatchell, on January 19, 2010, petitioner rebooted a computer on which another employee was working so that petitioner could use it herself. Hr'g Tr. 32. Hatchell testified that this hijacking "caused quite a disturbance" in the office, requiring her to hold a meeting to instruct the group not to reboot any more computers without permission from a manager or lead. *Id.* Hatchell stated that petitioner ignored this instruction two days later when she asked training specialist John Sheffield to reboot a computer on her behalf. *Id.* 33. Upon learning of the incident, Hatchell asked petitioner to come to her office to explain. Petitioner showed Hatchell the palm of her hand, told Hatchell to "see John [Sheffield]," and stated she was "going on break." *Id.* 33–34.

Petitioner testified that Hatchell "never had a meeting in reference to a reboot," Hr'g Tr. 154, and that she *did* go to Hatchell's office when summoned, *id.* 156. Petitioner conceded that she did not go to Hatchell's office immediately, but explained that she had to log off of her computer first, in accordance with office policy. *Id.* 156. Petitioner also explained that while she did tell Hatchell "I am on break," she did not actually go on break because Hatchell threatened her with a write-up. *Id.* 155.

John Sheffield testified that he rebooted the computer because he was not aware of any rule forbidding him to do so in his role as a training specialist. Hr'g Tr. 148–49. Sheffield had not been present during Hatchell's meeting two days earlier. *Id.* When asked if petitioner "told him" to reboot the computer, Sheffield stated "No. That is just what I do." *Id.* 147.

A letter in the record dated January 25, 2010, with subject line "Failure to Follow a Directive," corroborates Hatchell's version of events. J.A. 119. The letter, addressed from Hatchell to petitioner, states

> On Tuesday, January 19, 2010, I held a brief team meeting to discuss the use of computers when another employee is logged on. In the meeting, I instructed all employees to consult with the Manager or Lead if they start to work at a computer on which another employee is logged or to move to a computer that is not logged on by an employee. I also said that under no circumstances should an employee reboot a computer that has been logged on. . . .

> On Thursday, October 21st, you asked an employee who was not in attendance at the meeting to reboot a computer that had been logged on by another employee. Unknowingly, the employee rebooted the computer . . . . When I asked you if you rebooted the computer, you held the palm of your hand up to me and said "See John!" Upon asking again, you said, "See John!" At this time, I asked you to come to my office so we could further discuss this situation. You remained seated for a few minutes, and then got up and rather than follow my directive, you said you were going on break.

> . . .

> You failed to follow my instructions in regards to rebooting the computer and reporting to my office as directed. . . .

*Id.* The bottom of the letter states that "Employee elected not to sign." *Id.*

The arbitrator found Reason 1, specification 1 proper because petitioner's initial response, "See John," and delay in attending Hatchell's office, was insubordinate and contrary to instructions. Op. 25. The arbitrator also found specification 2 supported because

> Grievant did not ask Sheffield to reboot, but it is evident that she sat at the computer as if she wanted to use it until he rebooted it, and when she got the computer rebooted by passively inducing Sheffield to reboot it, she was as guilty of disobeying Hatchell's instructions as she would have been if she had rebooted it herself or asked Sheffield to do it for her.

*Id.* The arbitrator's findings are supported by substantial evidence. The Hatchell testimony and letter are sufficient evidence to sustain the arbitrator's ruling. To the extent petitioner's testimony explained or was contrary to the government's evidence, we conclude the arbitrator was free to find Hatchell's testimony and letter more credible. Credibility determinations made by the arbitrator, as with those by the MSPB, are "virtually unreviewable." *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986); *Wright v. U.S. Postal Serv.*, 183 F.3d 1328, 1334 (Fed. Cir. 1999).

The arbitrator also found Reason 1, specifications 3 and 4 proper, and we agree.

Specification 3 of Reason 1 concerned petitioner's "strong resistance to adhere to the Weekly Duty Schedule." The specification stated that petitioner's supervisors were forced to engage petitioner in "lengthy discussions"

about the Duty Schedule on multiple occasions in December 2009. The arbitrator found that petitioner "did not deny that she failed to perform her assigned work on those occasions" and found unpersuasive petitioner's argument that the schedule maker was not a manager and therefore her failure to comply could not be insubordinate. Op. 25. Petitioner argues on appeal that the arbitrator's determination on specification 3 was "irrational and capricious" because all of the instances occurred within one week and none of the instances were discussed with any "specificity." Pet'r Br. 14–15.

The arbitrator's conclusion sustaining specification 3 was not irrational or capricious. Petitioner did not dispute the testimony of lead clerk Sharon Watson that she resisted the work assigned to her in December 2009. Watson testified that "On this particular week I believe [petitioner] was scheduled for Quality. . . . She didn't want to do Quality that particular week. She felt she should do something else . . . ." Hr'g Tr. 81–82.

We find no error in the arbitrator's conclusion as to specification 3. The fact that petitioner's insubordination occurred on several instances during one week does not rebut the charge of failing to follow directives. Moreover, Watson's testimony suggests that petitioner's refusal to follow the Weekly Duty Schedule was not limited to just one week, even if the count was so limited. *E.g.*, Hr'g Tr. 83. Petitioner has not demonstrated error by the arbitrator in relying on Watson's testimony.

The arbitrator's conclusion as to specification 4 of Reason 1 is also supported. This specification involved petitioner's use of her cell phone in the work unit on September 21, 2009. A letter of that date with the subject header "Cell phone usage in the workplace," from lead clerk Carla Belle to Hatchell states

> As directed to Virginia Lovett on two other occasions, she was asked not to have conversation[s]

> on her cell phone while in the unit. Ms. Virginia [Lovett] walked passed Carla Belle (Acting Manager at the time) while on her phone.

> She continuously disregards the instructions of the Unit lead as well as Management.

J.A. 127. Petitioner states that the relevant cell phone policy at the time indicated that cell phones "should be used only in emergencies and/or if absolutely necessary." Pet'r Br. 12. Petitioner testified that she took at least one call because her brother was under medical supervision. *Id.* 13.

The arbitrator was not required to credit petitioner's testimony. Specification 4 refers to a specific call on a specific day, namely September 21, 2009. Petitioner did not testify that *the subject call* was from her brother, she simply testified that she remembered "one instance" in which her brother called. Hr'g Tr. 157. Moreover, the arbitrator found that petitioner's testimony did not ring true because petitioner did not offer the "medical emergency" explanation at the time of the incident. Op. 24–25.

The arbitrator's conclusion that the petitioner failed to follow management directives on four occasions is affirmed.

## II.

### REASON 2: WORKPLACE DISTURBANCES

Reason 2 for petitioner's removal comprises six specifications of workplace disturbances. All six specifications follow the same basic pattern, wherein petitioner was approached by a manager regarding a relatively mundane or trivial matter, and petitioner allegedly became "insolent," "loud," "belligerent" or "confrontational." *See* Notice 3, J.A. 94. Petitioner's testimony was the same on all six specifications: the managers were either "lying," "instigating," or "misunderstanding" the circumstances that led to

the disagreement. *See* Hr'g Tr. 158–84. Petitioner did not deny that the confrontations occurred, but instead generally stated that the confrontations were not her fault. *E.g.*, *id.* 161 ("[Belle] came back and she wanted the system and kind of made a commotion as far as me getting up."); *id.* 164 (" [Watson] got real upset. She got loud with me, and she was just right in my face. I tried to get her out of my face."). The arbitrator found that all six specifications were supported, and we affirm.

Reason 2, specification 4 is representative. This specification involved an allegation that petitioner became "confrontational and argumentative" towards lead clerk Sharon Watson on October 23, 2009, when Watson instructed petitioner to move a file cabinet back where it had been. Notice 2, J.A. 93. Watson testified that petitioner immediately and loudly told her she was being unfair in the middle of the floor, as the other employees watched. Hr'g Tr. 89. The incident is memorialized in a letter from Hatchell to petitioner, dated October 29, 2009:

> [Y]ou moved your pedestal file cabinet near the scanner without approval from your Manager or Lead. When the lead asked you to move it back to its original location you immediately became confrontational and argumentative with her stating . . . "you're being treated unfairly, etc."

> Virginia, please be aware when you refuse to perform a duty within your responsibility, this behavior is considered to be insubordination and will not be tolerated. This written counseling also serves as a reminder that any remarks and or gestures to the public, fellow peers or management officials that are reasonably considered to be rude, abusive or discourteous will not be tolerated under any circumstances.

J.A. 125. Petitioner signed the letter acknowledging her receipt, but hand-wrote on the letter a "Rebuttal," which

stated, among other things, "Tammy Hatchell you are not telling the complete truth. . . . You come to work with your body parts hanging out and try to flaunt it in my face, read dress code for managers. Not a strip joint." J.A. 125.

Petitioner argues on appeal that it was "undisputed" that she moved the cabinet back and therefore the "evidence elicited at the hearing did not support the conclusion reach by the arbitrator." Pet'r Br. 17. But contrary to petitioner's representation, it was not "undisputed" that petitioner moved her cabinet back when asked. *Compare* Hr'g Tr. 170-71 ("I didn't move the cabinet back. I mentioned to Sharon that I wanted to talk her later about the situation.") *with id.* 195 ("Q When your manager told you to move your cabinet back, you didn't do it, did you? A Yes, I did. Yes, I did. I had no reason to leave it there after she told me to move it."). And even if the testimony were undisputed that petitioner moved the cabinet back, it would not matter. The specification is for a workplace *disruption*; it is irrelevant whether petitioner eventually moved the cabinet back to its original place if she first became confrontational and argumentative. The arbitrator found that petitioner's testimony was "insufficient to refute the specification," Op. 26, and this finding was supported by substantial evidence.

We have reviewed the additional five specifications and affirm the arbitrator's conclusions on those counts.

## III.

### REASON 3: INAPPROPRIATE EMAILS AND LETTERS

Reason 3 for petitioner's removal was the sending of inappropriate letters and emails, on which there were four specifications.

Specifications 1 and 2 revolved around emails petitioner wrote on February 12, 2010 criticizing her coworkers. The first email states that lead clerk Sharon

Watson "is trouble" and asks that petitioner's work with Watson be limited. J.A. 108. The second email blames other employees for errors in petitioner's work and states that "ICT needs people who know how to train professionally." J.A. 106.

Specification 3 involved a handwritten letter dated February 2, 2010, in which petitioner accused Hatchell of "harassment" and telling "lies." J.A. 110. The letter also states that petitioner intended to tell the Inspector General of Tax Administration ("TIGTA") about a car accident involving Hatchell in which two people were killed, implying that Hatchell did something wrong in being a part of the accident. *Id.*

The arbitrator partially sustained specifications 1 and 2, and sustained specification 3. Op. 27. The arbitrator explained that while neither February 12 email constituted misconduct by itself, the two emails together demonstrated petitioner's

> persistent unwillingness to accept constructive criticism and corrective instruction from her supervisors, and her routine practice of criticizing managers, trainers, and leads, who tried to correct deficiencies in her performance.

Op. 27. The arbitrator found that the February 2 handwritten letter was "an apparent attempt to threaten and intimidate" Hatchell. *Id.*

Specification 4 centered on a letter in which petitioner requested to be represented by union representative Tita Grier whenever speaking with Hatchell, and was not sustained. J.A. 109. The arbitrator found that the letter did not amount to misconduct. Op. 27.

We conclude the arbitrator did not err in analyzing the specifications under Reason 3. The February 2 letter can fairly be read as a threat, and the February 12 emails

sufficiently support the arbitrator's finding of a "routine practice of criticizing managers."

## IV.

### REMOVAL

Petitioner contends that the penalty of removal cannot be supported under the "minor infractions" found by the arbitrator. Pet'r Br. 19. The petitioner also cites the testimony of John Schwartz, in which Schwartz mistakenly stated that petitioner called Hatchell a "murderer"—a term petitioner never used. *Id.* 20. On these bases, petitioner seeks reversal.

The government argues that the IRS's guide to Penalty Determinations provides no rigid standards for penalties for particular actions, but the MSPB has found that failing to follow instructions, abusive and disrespectful behavior, and failure to follow instructions are each independently bases for removal. Gov't Br. 33–34.

The factors which are generally recognized as relevant in determining the appropriateness of a disciplinary penalty were set forth by the MSPB in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981). *See Kline v. Dep't of Transp., F.A.A.*, 808 F.2d 43, 45 (Fed. Cir. 1986). The *Douglas* factors include: (1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (10) potential for the employee's rehabilitation; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. 5 M.S.P.R. at 305–06.

"Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency. This court defers to an agency's choice of penalty unless the penalty exceeds the range of permissi-

ble punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offence that it amounts to an abuse of discretion." *Zingg v. Dep't of Treasury, IRS*, 388 F.3d 839, 843 (Fed. Cir. 2004).

The arbitrator concluded that government's decision to remove petitioner was not unconscionable or disproportionate to the offenses petitioner committed. Although Director Schwartz incorrectly testified that petitioner called Hatchell a "murderer" when she did not use that word, the arbitrator specifically addressed Schwartz's mistake and found that the agency's decision would not have been different had Schwartz properly attributed the comment. Op. 29. The arbitrator explained that the letter "was intimidating, threatening and inappropriate even though the word was not used." *Id.* Moreover, Schwartz relied on several factors, not just the "murderer" comment, in deciding to remove petitioner. The arbitrator credited Schwartz's testimony that petitioner was repeatedly given counseling memos and reprimands that did not change her behavior, as well as his testimony that petitioner's inability to get along with her fellow workers, and her inability to perform work satisfactorily, were aggravating factors. *Id.*

On this record, we cannot conclude that the agency or the arbitrator committed an abuse of discretion. *Bryant v. Nat'l Sci. Found.*, 105 F.3d 1414, 1416 (Fed. Cir. 1997). The choice of penalty is committed to the sound discretion of the employing agency and will not be overturned unless the agency's choice of penalty is wholly unwarranted in light of all the relevant factors. *Guise v. Dep't of Justice*, 330 F.3d 1376, 1382 (Fed. Cir. 2003).

CONCLUSION

The arbitrator's decision is supported by substantial evidence.

**AFFIRMED**

No costs.