Opinion for the court filed by Circuit Judge CHEN.
Dissenting opinion filed by Circuit Judge DYK.
CHEN, Circuit Judge.
Dr. Jaime Gumbs appeals from a final order of the Merit Systems Protection Board (Board) which adopted the initial decision of an administrative judge and sustained Dr. Gumbs’ removal from the Indian Health Service, Pawnee Health Center (agency) based on the charges of failing to maintain a valid medical license and practicing medicine without a valid license. Chimbs v. Dep’t of Health and Human Servs., No. DA-0752-13-0648-I-1, 2014 WL 5338829 (MSPB July 10, 2014) (Final Order). Because substantial evidence supports the Board’s findings sustaining the agency’s charges against Dr. Gumbs, and the Board did not abuse its discretion in determining that the penalty for Dr. Gumbs’s misconduct was reasonable, we affirm.
*947 BACKGROUND
Dr. Gumbs was employed with the Indian Health Service (IHS) as a General Practice Medical Officer in the Pawnee Service Unit in Pawnee, Oklahoma (clinic) for almost 22 years. The clinic operates with the permission of several Native American tribes in the area to provide medical care for members of those tribes. Joint Appendix (J.A.) '55. As a medical officer, Dr. Gumbs was subject to the Bylaws, Rules, and Regulations of the Medical Staff of the United States Public Health Service, Pawnee Service Unit, IHS (bylaws). Under these bylaws, Dr. Gumbs was required to have a current, full, and unrestricted medical license. J.A. 111. The bylaws also required Dr. Gumbs to be fully credentialed prior to seeing patients at the clinic. J.A. 116.
For most of his employment at the agency, Dr. Gumbs was licensed to practice medicine by the Commonwealth of Puerto Rico (Puerto Rico). He is not licensed by any other state or territory to practice medicine. At some point, Dr. Gumbs began to experience administrative difficulties and delays in renewing his medical license with the Puerto Rico Department of Health, Office of Regulation and Certification of Health Professionals (medical board). J.A. 93.
According to Dr. Gumbs, when seeking to renew his medical license in 2007, the Puerto Rico medical board’s computer system failed to timely process his application, and as a result, his license lapsed. Dr. Gumbs informed his supervisor, Dr. Steven P. Sanders, director of the IHS clinic, that his license had inadvertently expired. Dr. Gumbs was without an active medical license for about a month as he waited for the Puerto Rico medical board to renew his license. During this period, Dr. Gumbs did not see patients or perform any of his job responsibilities. At this time, Dr. Sanders did not place Dr. Gumbs on leave without pay status or file a formal disciplinary action against him.
The next renewal date for Dr. Gumbs’ license was in 2010. According to Dr. Gumbs, the medical board’s web site again failed during the renewal application process, and thus the renewal of his license was again delayed. Id. Despite these administrative difficulties, Dr. Gumbs received his renewed license three days before it was scheduled to expire. Id.
In 2013, Dr. Gumbs again allowed his medical license to lapse. Dr. Gumbs’ license was set to expire on May 8, 2013, and he began the application process for renewal of his license in February of that year. According to Dr. Gumbs, the Puerto Rico medical board’s online portal was experiencing technical difficulties when he attempted to access the site during the month of February. Dr. Gumbs next attempted to access the site three weeks later in March. According to Dr. Gumbs, the site was again experiencing difficulties. In April, Dr. Gumbs enlisted the help of a physician co-worker at the clinic who also had experience renewing his license with the Puerto Rico medical board. Nevertheless, even with his co-worker’s help, Dr. Gumbs was unable to complete his license renewal application online. During this period of time, Dr. Gumbs informed Dr. Sanders as well as Kristie Choate, the clinic’s credentialing officer, that he had not yet renewed his medical license.
Unable to complete his license renewal online, on April 22 Dr. Gumbs sent a paper copy of his license renewal application to the medical board with a money order of $150 to cover what he believed to be the renewal fee. The application was received by the medical board on April 29. On May 7, Dr. Gumbs informed Dr. Sanders and Ms. Choate that his license had not been *948 renewed, and that it would expire by the next day.
Dr. Gumbs’ license expired at midnight on May 7. Although aware that his license had expired, Dr. Gumbs arrived at work on May 8 and began his normal rounds. He evaluated a patient, prescribing medication to treat that patient. J.A. 99-105. Dr. Gumbs was in the middle of examining a second patient when he was interrupted by Dr. Sanders, who ordered him to stop treating patients. Dr. Sanders had just been informed by Ms. Choate that Dr. Gumbs’ license had not been renewed and thus had expired. Dr. Gumbs was thereafter reassigned to the medical records department, and was not permitted to see any other patients.
Dr. Gumbs then learned he had not yet submitted a complete license application because he had not included the full required renewal fee with his application. J.A. 95. On May 9, Dr. Gumbs purchased a money order for an additional $100 — the amount still owed to the Puerto Rico medical board. The medical board received Dr. Gumbs’ full renewal fee on May 15, which completed his license renewal application. Id. The next day, on May 16, the medical board called Dr. Gumbs to inform him that his now-completed application had been accepted and that he would receive a renewal of his medical license by e-mail. Id. The renewal was dated May 16, the day the licensing authority received and cashed the money order submitted by Dr. Gumbs in order to complete his license renewal application. Id.
In a letter dated May 22, 2013, Dr. Sanders notified Dr. Gumbs that he was proposing to remove him based on his failure to maintain a valid medical license and his practice of medicine without a valid medical license. On June 18, 2013, Dr. Travis Scott, Chief Executive Officer of the clinic, notified Dr. Gumbs that he had decided to remove him from his position for “(1) Failure to maintain a valid medical license, and (2) Practice of medicine without a valid medical license.” J.A. 82.
Dr. Scott explained that “[mjaintaining a valid medical license [wa]s a condition of employment,” and although Dr. Gumbs was aware of the difficulties in renewing his medical license from the Puerto Rico medical board, he had not accepted responsibility for the untimeliness in obtaining that renewal. Id. Dr. Scott noted that Dr. Gumbs treated a patient after expiration of his medical license, and was in the middle of evaluating another patient when Dr. Sanders instructed him to stop. Id. Dr. Scott explained that it was Dr. Gumbs’ “responsibility to recognize that [he] d[id] hot have authorization to practice medicine without a medical license.” Id. Dr. Scott continued that “[t]hese requirements are clearly stated in the Medical Staff Bylaws.” Id. Dr. Scott explained that Dr. Gumbs’s misconduct exposed the clinic to liability. Id.
When selecting removal over a lesser penalty, Dr. Scott explained that Dr. Gumbs held a position that required a medical license, and that his failure to maintain such a license adversely impacted the clinic. Dr. Scott considered Dr. Gumbs’s lengthy service and awareness of the clinic’s bylaws, and also provided an analysis justifying Dr. Gumbs’s proposed removal under eleven of the twelve factors identified in Douglas v. Veterans Admin., 5 MSPB 313, 332, 5 M.S.P.R. 280 (1981).
Dr. Gumbs timely appealed the agency’s action removing him from service. Gumbs v. Dep’t of Health and Human Servs., No. DA-0752-13-0648-1-1 (MSPB Nov. 7, 2013) (Initial Decision). An administrative judge found the agency had proven both charges forming the basis of Dr. Gumbs’s removal by a preponderance of the evidence: that Dr. Gumbs failed to *949 maintain a valid medical license and that Dr. Gumbs practiced medicine without a license. Initial Decision at 2-10. The judge determined that in view of the sustained charges, the agency’s penalty of removal was reasonable. Id. at 10-12.
Dr. Gumbs petitioned for review of the Board’s initial decision, arguing that it was contrary to evidence, that the clinic’s action did not promote the efficiency of the service, and that the penalty of removal was not reasonable. The Board denied this petition and affirmed the initial decision, finding that Dr. Gumbs had not shown error in the administrative judge’s findings, that the agency had established a nexus between Dr. Gumbs’ misconduct and an adverse effect on the agency’s operations, and that in view of the sustained charges, the penalty of removal was reasonable. Final Order at 2-6. Dr. Gumbs timely appealed the Board’s Final Order. We have jurisdiction over Dr. Gumbs’ appeal pursuant to 28 U.S.C. § 1295(a)(9).
DISCUSSION
Our review of Board decisions is defined narrowly and limited by statute. E.g., Graybill v. United States Postal Serv., 782 F.2d 1567, 1570 (Fed.Cir.1986); Maddox v. Merit Sys. Prot. Bd., 759 F.2d 9, 10 (Fed.Cir.1985). We must affirm a Board decision unless it is 1) arbitrary or capricious or not in accordance with law, 2) obtained without procedures required by law, rule, or regulation having been followed, or 3) unsupported by substantial evidence. 5 U.S.C. §§ 7703(c)(1)-(3); Hayes v. Dept of the Navy, 727 F.2d 1535, 1537 (Fed.Cir.1984).
I
Dr. Gumbs does not challenge the Board’s finding that his medical license expired, which supported the agency’s charge that Dr. Gumbs failed to maintain a valid medical license. Appellant’s Br. 2 (“[Tjhere was a seven-day lapse between expiration of [Dr. Gumbs’s] existing license and issuance of a renewed one.”). Indeed, there is no dispute that Dr. Gumbs did not submit a complete license renewal application until May 15, 2013, when the medical board received Dr. Gumbs’ full license renewal application fee. J.A. 95; see also Letter from parties, Dkt. No. 72 (“[T]he parties agree the record shows that, as of the morning of May 8, 2013, Dr. Gumbs owed the Puerto Rico licensing authority an additional $100.”).
Instead, Dr. Gumbs challenges the Board’s finding that he practiced medicine without a license. Dr. Gumbs argues that he only, saw a single patient. He notes that Dr. Sanders eventually reviewed and completed the medical records associated with that patient. Dr. Gumbs also asserts there is no evidence he actually performed any services or engaged in any activities that morning for which a medical license was expressly required. However, the record shows that Dr. Gumbs reviewed a patient’s medical history, conducted a physical, and then prescribed and signed off on treatment and medication to that patient. J.A. 32-33; 99-105. There is no dispute he was purporting to act as a doctor, and not a paraprofessional or medical assistant. Second, while Dr. Sanders subsequently reviewed the medical records for the patient evaluated by Dr. Gumbs, Dr. Sanders’ subsequent review does not erase the fact that it was Dr. Gumbs — and not Dr. Sanders — who actually saw, evaluated, and prescribed treatment for the patient. Thus, although Dr. Gumbs attempts to justify his conduct on the morning of May 8, his explanation does not negate the substantial evidence supporting the Board’s finding that he practiced medicine without a valid license.
*950 II
Dr. Gumbs also challenges the Board’s finding that his removal promoted the efficiency of the agency’s service. A federal agency may discipline an employee “only for such cause as will promote the efficiency of the service.” 5 U.S.C. § 7513(a). The agency must demonstrate a “nexus” between the employee’s misconduct and “an adverse effect upon the agency’s functioning.” Mings v. Dep’t of Justice, 813 F.2d 384, 389-90 (Fed.Cir.1987). We uphold a Board’s finding of a “nexus” if it is supported by substantial evidence. Brown v. Dep’t of Navy, 229 F.3d 1356, 1358 (Fed.Cir.2000).
Dr. Gumbs argues that because nothing in the record shows that he provided anything but routine, quality medical care at the clinic on May 8, there was no risk of negative repercussions from his action. Dr. Gumbs minimizes, however, the potential negative repercussions that could have resulted from his misconduct. As the Board found, Dr. Gumbs’ misconduct “not only threatened the trust of the Native American community, but also exposed the agency to liability.” Final Order at 5.
The failure to maintain a valid medical license and the practice of medicine without such a license were “a violation of [the] Joint Commission Accreditation Stan-dardes],” J.A. 36, and a violation of the clinic’s bylaws. 'Final Order at 4; J.A. 82. For example, the clinic’s bylaws require all medical professionals to “[h]old a current, full and unrestricted license to practice as a licensed independent practitioner (i.e., Medical/Osteopathic Physician ...) in the United States, or Territory of the United States.” J.A. 111. The bylaws also require medical practitioners to “be fully credentialed prior to seeing patients in the [clinic].” J.A. 116. Thus, even accepting that Dr. Gumbs provided “routine quality care” without his license, it is the practice of medicine without a license itself that forms the basis of his misconduct.
As Dr. Scott explained in his proposal to remove Dr. Gumbs from his position, the mission of the agency is to provide “the best health care possible at the highest level for the American Indian/Alaska Natives in the tribal community.” J.A. 85. Dr. Gumbs occupied a position with regular contact with the public and became well-known to the patients and to the population of the community at large. Id. Dr. Scott explained that Dr. Gumbs’ “lack of responsibility to ensure he maintained a valid license affect[ed] the mission of the [clinic] to provide clinical services” to those in this community. In particular, Dr. Scott asserted that if Dr. Gumbs’ unlicensed practice of medicine became known to the Native American community, it was “the experience of the [agency] that this becomes newsworthy and adversely impacts the reputation of the agency.” J.A. 86.
In addition, Dr. Scott noted that Dr. Gumbs was well aware of the requirements to maintain his medical license, and even though he knew that his license had expired, chose to place the clinic at risk by providing unlicensed medical care. J.A. 85. This placed the clinic in violation of its own bylaws and exposed the agency to tort liability by creating a presumption that both Dr. Gumbs and the clinic were providing negligent care. J.A. 82-83.
Dr. Gumbs’ characterization of the harm from his unlicensed practice of medicine as “speculative” misses the point because it does not account for the mission of the agency. As explained by Dr. Scott, it is important to the clinic to maintain the trust of the Native American community, and any lapse of responsibility to maintaining adequate standards — such as by violating its own bylaws — threatened to break that trust. See J.A. 36. Even if no harm *951 to the agency specifically resulted from his treatment of the patient on May 8, on a more general level, Dr. Gumbs’ misconduct had the potential to cause significant harm to the agency if it caused the Native American community to perceive that the clinic was not adhering to its internal procedures and was not dedicated to providing responsible medical care. In short, substantial evidence supports the Board’s finding of a nexus between Dr. Gumbs’ misconduct and an adverse effect on the agency.[1]
Ill
Dr. Gumbs also argues that the penalty of dismissal was disproportionate and unreasonable. He contends that his misconduct did not warrant removal from his position and that Dr. Scott should have given consideration to alternative penalties. Consideration of an appropriate penalty is a matter committed primarily to the discretion of the employer and can be reversed only for an abuse of discretion. See Lachance v. Devall, 178 F.3d 1246, 1251 (Fed.Cir.1999); Villela v. Dep’t of the Air Force, 727 F.2d 1574, 1576 (Fed.Cir.1984). The penalty must be reasonable in light of the sustained charges, and we have “effectively defined reasonable in this context to mean merely that the agency’s choice of penalty not be grossly disproportionate to the offense.” Webster v. Dep’t of Army, 911 F.2d 679, 685 (Fed.Cir.1990) (internal quotations omitted).
Here, the Board evaluated the reasonableness of the agency’s penalty after consideration of several relevant factors laid out in Douglas, 5 MSPB at 332, 5 M.S.P.R. 280.[2] In particular, because Dr. Gumbs failed to maintain a condition of his employment — holding a valid medical li *952 cense — the Board determined the most relevant Douglas factors were 1) the nature of the offense, 2) its effect on his job performance, and 3) the availability and effect of alternative sanctions. Final Order at 6. The Board found that the agency properly considered the seriousness of the charge of practicing medicine without a license, the fact that Dr. Gumbs, as a condition of his employment was required to maintain his license and be fully credentialed before treating patients, and the fact that Dr. Gumbs knew his license had expired yet still decided to practice medicine, which exposed the agency to liability and jeopardized the Native American community’s trust in the clinic. Id. The Board explained that although Dr. Scott was aware that other options existed, based on the sustained charges, removal was not an unreasonable penalty due to the gravity of Dr. Gumbs’ misconduct. Id. at 7.
Dr. Gumbs argues that because the lapse of his medical license was unintentional and inadvertent, and that his misconduct was not willful and did not appear to result in any actual harm, a lesser sanction would have been more appropriate. But our role is not to reweigh anew the evidence before the Board. Dr. Scott explained that although a lesser sanction was possible, he believed Dr. Gumbs need to be removed “to make sure that [Dr. Gumb’s misconduct] d[idn’t] happen again at [the clinic].” J.A. 48. We find no abuse of discretion in the Board’s determination that the agency’s penalty, in view of the sustained charges that Dr. Gumbs let his license expire and then practiced medicine without a license, is not unreasonable.
AFFIRMED.
Costs
No costs.

. Dr. Gumbs also argues that his removal denigrated the agency’s mission by delaying patient care and increasing the workload of the remaining care providers while IHS was hiring a new physician. But the focus of the efficiency inquiry is its impact of the employee's misconduct on the agency, not the impact of the imposed penalty itself. See Mings, 813 F.2d at 389-90. While Dr. Gumbs’ allegations may be true, they do not negate evidence of a nexus between Dr. Gumbs’ misconduct and an adverse effect on the agency.

. The Douglas factors are: 1) the nature and seriousness of the offense, and its relation to the employee’s duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; 2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; 3) the employee’s past disciplinary record; 4) the employee’s past work record, including length of service, performance op the job, ability to get along with fellow workers, and dependability; 5) the effect of the offense upon the employee’s ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee’s work ability to perform assigned duties; 6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; 7) consistency of the penalty with any applicable agency table of penalties; 8) the notoriety of the offense or its impact upon the reputation of the agency; 9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question; 10) the potential for the employee’s rehabilitation; 11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and 12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. Douglas, 5 MSPB at 332, 5 M.S.P.R. 280. We have approved the use of these factors for determining the reasonableness of a penalty. Zingg v. Dep’t of Treasury, IRS, 388 F.3d 839, 841 (Fed.Cir.2004). However, the factors listed in Douglas are not exhaustive, and an agency is required only to consider those factors relevant to the action. Bryant v. Nat’l Sci. Found., 105 F.3d 1414, 1418 (Fed.Cir.1997).